## UNITED STATES v. THOMSON.
## SAME v. CRAIG.
### Nos. 7227, 7230.

Circuit Court of Appeals, Seventh Circuit.

July 5, 1940.

Rehearing Denied July 17, 1940.

Harold Lindley, of Danville, Ill., and Harry I. Hannah and Thomas R. Figenbaum, both of Mattoon, Ill., for appellants.

Arthur Roe, U. S. Atty., and Ray M. Foreman, Asst. U. S. Atty., both of Danville, Ill., and Carl W. Feickert, of East St. Louis, Ill., for appellee.

Before EVANS, MAJOR, and KERNER, Circuit Judges.

EVANS, Circuit Judge.

Defendants were charged with, and convicted of, the crime of devising a scheme to defraud and using the mails in furtherance thereof and also with a conspiracy to violate Section 338, Title 18, United States Code, 18 U.S.C.A. § 338. They were tried together, and imprisonment sentences pronounced on both. Each appealed separately. The questions presented on both appeals are

in some respects alike and one opinion will dispose of both appeals.

Defendants ask us to review and reverse the ruling of the District Court made on their motion to suppress evidence secured through an allegedly illegal search of their property and possessions.

The issue is a narrow one. Were two searches made by post office inspectors reasonable?

Post office inspectors without search warrants made two searches, one August 3, 1938, and one August 16, 1938. The Government's answer to the asserted illegality of the first search is that defendants consented thereto.

Its justification of the August 16th search was that it was made on the occasion of the arrest of the defendants pursuant to warrants issued on the indictment returned in this case. No search warrant was necessary.

On this second search, seventeen mail bags of books, papers and documents were taken in the course of a two hour search made by the post office inspectors while the marshal stood by and the defendants were making arrangements for bail.

The District Court heard oral evidence and ruled against the defendants' motion.

Defendants were in the business of merchandising cosmetics and did so by means of hundreds of solicitors with whom agency contracts were executed. The alleged fraud set forth in each of the many counts of the indictment arose out of these agency contracts. Deposits taken from the solicitors were not repaid, or only rarely. Salaries earned, due to impossible requirements as to hours of service, daily reports, etc., of the agency contract, could not be, or at least were not, collected.

■ Defendant Thomson had successfully promoted several cosmetic companies, either alone or in partnership. Complaints about him and his ways reached the post office inspectors, who, on August 3, without warrant, called at defendants' place of business to investigate the facts and obtain the names and addresses of the agents so that they might correspond with them. One inspector testified he asked for the names of various agents. He testified that defendant went through his files and gave them to him voluntarily. Thomson, on the other hand, denied granting permission to the inspector to withdraw such records.

The District Court heard oral evidence on the fact issues arising out of defendants' motion to suppress the evidence obtained from this and the other search and reached the conclusion, which we think is well supported by the evidence, that Thomson not only waived his right to object to the use of this evidence, but invited the post office inspector to examine the same and "get any information he desired." This disposes of defendants' objections to the first—the August 3d search.

■ The testimony respecting the search on the 16th of August is not free from dispute.

The investigation of the post office inspector, following the August 3d visit, resulted in the presentation of evidence to the Grand Jury and the return of an indictment against the defendants.

On August 16th the marshal and his deputy arrived at the defendants' place of business with a warrant for their arrest. At the same time two post office inspectors appeared, and, after the arrest was made, the inspectors proceeded to search the premises. They went through defendants' files and records and removed a great many documents. Thomson stated he protested against the removal of his papers and asked leave to telephone his attorney. The inspectors told him they had the legal right to search and seize whenever the Government was making an arrest. They advised him to arrange for his bail. While the marshal was not active in making the search, he was present and the accused was also there during the entire period of the search.

Statements of the law of search and seizure in somewhat analogous cases have been announced by the Supreme Court in the following cases: Gouled v. United States, 255 U.S. 298, 41 S.Ct. 261, 65 L. Ed. 647; Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145, 51 A. L.R. 409; Marron v. United States, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231; Go-Bart Co. v. United States, 282 U.S. 344, 51 S.Ct. 153, 75 L.Ed. 374; United States v. Lefkowitz, 285 U.S. 452, 52 S.Ct. 420, 76 L.Ed. 877, 82 A.L.R. 775.

In the face of these decisions it is hardly helpful to cite decisions of inferior courts, which are out of harmony with the holdings of these cases. Differences of opinion may well exist over the weight of the reasons upon which the conclusions expressed in these opinions rest, but our duty

is clear. It is to apply these decisions to the facts of each case. So doing, we must reverse the judgment in this case.

In thus disposing of this case we assume: (a) That neither the length of the search at the time of the arrest, nor the volume of the evidence seized has anything to do with the validity of the search. One single bit of evidence, no larger than a half carat diamond, may be all that is seized in one case. Thirteen truck loads of liquor, still apparatus, etc., may be taken in another case. The smuggled diamond may be so skillfully concealed that much time is required for the searching officers to locate it, whereas the defendant may be sitting in his still house surrounded by vats of liquor, in the second search, and no time at all required to complete the search. In other words, the reasonableness of the search depends upon the facts in each case, and this applies to the length of the search and the quantity seized.

(b) The right to search when defendant is arrested is no greater than when the search is made pursuant to a search warrant. There is an intimation in one of the opinions that the right is not quite as comprehensive in the case of search when arrest is made. In United States v. Lefkowitz, 285 U.S. 452, 52 S.Ct. 420, 423, 76 L.Ed. 877, 82 A.L.R. 775, the court said: "* * * The authority of officers to search one's house or place of business contemporaneously with his lawful arrest therein upon a valid warrant of arrest certainly is not greater than that conferred by a search warrant issued upon adequate proof and sufficiently describing the premises and the things sought to be obtained."

(c) A valid search may result in the seizure of papers as well as other kinds of property. The test is not the nature of the property seized (papers or liquor for instance), but whether such property was by the accused used in perpetrating a crime. In Gouled v. United States, 255 U.S. 298, 41 S.Ct. 261, 265, 65 L.Ed. 647, the court said: "There is no special sanctity in papers, as distinguished from other forms of property, to render them immune from search and seizure, if only they fall within the scope of the principles of the cases in which other property may be seized, and if they be adequately described in the affidavit and warrant. Stolen or forged papers have been so seized, * * * and lottery tickets, * * * and we cannot doubt that contracts may be so used as instruments or agencies for perpetrating frauds upon the government as to give the public an interest in them which would justify the search for and seizure of them, under a properly issued search warrant, for the purpose of preventing further frauds. * * *"

(d) Where the papers of the accused are seized upon a search solely for use as evidence of a crime of which respondents were accused or suspected, the search may be described as unreasonable. In the Lefkowitz case the court said: "Respondents' papers were wanted by the officers solely for use as evidence of crime of which respondents were accused or suspected. They could not lawfully be searched for and taken even under a search warrant issued upon ample evidence and precisely describing such things and disclosing exactly where they were. * * *"

Distinguishing the facts in the Marron case, the court said:

"* * * There, prohibition officers lawfully on the premises searching for liquor described in a search warrant, arrested the bartender for crime openly being committed in their presence. * * * The ledger and bills being in plain view were picked up by the officers as an incident of the arrest. No search for them was made. The ledger was held to be part of the outfit actually used to commit the offense. The bills were deemed so closely related to the business that it was not unreasonable to consider them as employed to carry it on. While no use was being made of the book or paper at the moment of the arrest, they—like containers [etc.]—were kept to be utilized when needed. The facts disclosed in the opinion were held to justify the inference that when the arrest was made the ledger and bill were in use to carry on the criminal enterprise.

"Here, the searches were exploratory and general and made solely to find evidence of respondents' guilt of the alleged conspiracy or some other crime. Though intended to be used to solicit orders for liquor in violation of the act, the papers and other articles found and taken were in themselves unoffending. The decisions of this court distinguish searches of one's house, office, papers or effects merely to get evidence to convict him of crime from searches such as those made to find stolen goods for return to the owner, to take property that has been forfeited to the government, to discover property concealed to

avoid payment of duties for which it is liable, and from searches such as those made for the seizure of counterfeit coins, burglars' tools, gambling paraphernalia and illicit liquor in order to prevent the commission of crime. * * *

"This case does not differ materially from the Go-Bart Case and is ruled by it. An arrest may not be used as a pretext to search for evidence. The searches and seizures here challenged must be held violative of respondents' rights under the Fourth and Fifth Amendments."

It is apparent that this case governs the law applicable to the facts in the case before us.

The papers seized in the instant case were in themselves not offending. They were taken for the sole purpose of getting evidence to convict the defendants of a crime with which they had been charged.

It would be unjust and illogical to separate the two cases and uphold the judgment as to one defendant and reverse it as to the other. While the Constitutional Amendments upon which the defense of illegal search and seizure is based may have been available to only one defendant, nevertheless the trial of the two together, and the introduction of evidence against them both may well have worked to the prejudice of the other.

The judgment is reversed with directions to grant a new trial.