**UNITED STATES of America, Plaintiff-Appellee,**

**v.**

**William W. RABIN, Defendant-Appellant.**

**No. 13804.**

United States Court of Appeals Seventh Circuit.

April 25, 1963.

Richard E. Gorman, Chicago, Ill., for appellant.

James P. O'Brien, U. S. Atty., John Powers Crowley, Asst. U. S. Atty., Chicago, Ill. (John Peter Lulinski, Robert S. Atkins, Asst. U. S. Attys., of counsel), for appellee.

Before HASTINGS, Chief Judge, CASTLE, Circuit Judge, and MERCER, District Judge.

CASTLE, Circuit Judge.

William W. Rabin, defendant-appellant, was convicted following a jury trial of violations of 18 U.S.C.A. § 2315 charged in the first four counts of a nine

count indictment. He was sentenced to imprisonment for ten years and fined $10,000 and costs on each of the four counts. The sentences of imprisonment are to run concurrently but the fines are cumulative.

The counts upon which he was convicted [1] charged defendant-appellant, individually, with pledging to a Chicago bank as security for loans on each of four separate dates a designated number of stolen Canadian bearer bonds of a stated value in excess of $5000 in each instance. The counts charged that said securities were a part of and constituted interstate and foreign commerce and were moving as such from Brockville, Ontario, Canada, where they had been stolen, to Chicago, Illinois, and that the defendant knew the securities to have been stolen and made said pledges with unlawful and fraudulent intent, willfully, knowingly and feloniously in violation of § 2315.

The main contested issues presented by defendant's appeal are:

(1) Whether in order to establish the offenses of which defendant was convicted it was essential that proof be made of Canadian law to show that under such law the taking of the securities was such as to characterize them as securities "stolen, unlawfully converted, or taken" within the meaning of 18 U.S.C.A. § 2315.

1. The appellant was acquitted on Count V which charged him with unlawful concealment of stolen securities so transported in violation of § 2315. He was acquitted on Count VI which charged him with devising a scheme and artifice to defraud, involving the use of stolen Canadian securities, and sending a communication by wire and radio in interstate and foreign commerce for the purpose of executing the same, in violation of 18 U.S.C.A. § 1343, and charged Sam Mannarino, Norman Rothman and George Eric Rosden as aiders and abettors. He was acquitted on Count IX which charged him, Mannarino, Rothman and Rosden (and named Giuseppe Cotroni and Rene Robert as co-conspirators but not as de-

fendants) with conspiracy to violate §§ 1343 and 2315 in connection with the pledging etc. of such stolen and transported securities, in the manner and description set out in Counts I to VIII, inclusive, in violation of 18 U.S.C.A. § 371. Counts VII and VIII which charged violations of § 1343 similar to Count VI but alleged the means of communication to be a long-distance phone call and a cablegram, respectively, were dismissed on motions of the defendants involved at the conclusion of all the evidence.

At the conclusion of the Government's case a motion by defendant Rothman for acquittal was granted. Defendants Mannarino and Rosden were acquitted by verdict of the jury.

(2) Whether there was evidence to establish:

(a) that the securities pledged were a part of or moving in interstate or foreign commerce, and

(b) that defendant had knowledge of the stolen character of the securities he pledged.

(3) Whether the trial of the defendant on the multiple counts, including the conspiracy count, resulted in such prejudice to the defendant as amounts to a denial of a fair trial and an abuse of due process.

The record discloses that sometime early in the morning of May 4, 1958, the premises of the Brockville Trust and Savings Bank, Brockville, Ontario, Canada, were broken into. The north wall of the bank's vault had been forcibly entered and a hole approximately 22 inches in diameter had been made therein. In the vault itself, holes had been cut through the doors of two safes and the combination lock had been knocked off a third. On the floor of the vault there was a considerable amount of charred papers and bonds. Tools such as crowbars, picks, electric drills, and acetylene torch cutting equipment were spread about the premises. In excess of $3,000,-000 worth of Canadian bonds which had been in the valut for safe-keeping were missing. The next day $1,200,000 worth of bonds which had been taken from the bank were found in a railway station locker in Montreal. Brockville is located midway between Montreal and Toronto, Canada.

The defendant pledged Canadian bearer bonds, identified as among those taken from the Brockville bank, with a Chicago, Illinois, bank as security for loans made him. These transactions took place on September 16, September 29, October 1, and October 2, 1958, and involved bonds valued at $13,700, $16,300, $10,000 and $89,000 respectively. In each instance the pledge was made shortly after the defendant returned from a trip to Montreal. He was in Montreal on September 11, September 27, and September 30, 1958.

The foregoing is but a partial summary of the evidence but it will suffice to serve as a preface to a discussion of the issues raised on appeal.

■■ The defendant contends that to establish the offenses for which he was convicted it was incumbent upon the government to make proof of the law of Canada and to establish by such proof that the taking of the securities from the bank at Brockville was a violation of the law of Canada. He relies, in this connection, on the application of the doctrine that United States Courts may not take judicial notice of the laws of a foreign country. But such reliance is misplaced. In the application of § 2315 it is of no import whether Canada has a law which proscribes the conduct perpetrated in the forced entry of the Brockville bank and the taking and carrying away of the securities entrusted to its care with intent to deprive the owners thereof. Wherever the right to possess property is recognized the taking and carrying away of the property of another without his consent and with intent to deprive him of it is stealing. And this would remain so apart from the promulgation of a specific legal interdiction of such conduct. And courts and juries may take judicial notice of such matters of common knowledge.

A contention similar to that advanced by defendant was rejected in United States v. Greco, 2 Cir., 298 F.2d 247, 250, 251, where it was stated:

"Appellant also argues that there was insufficient evidence for the trial court to infer that the bonds involved were stolen. However, a hole cut in a bank vault wall, an acetylene torch lying nearby and testimony (by stipulation) that the bonds involved in this case were among those missing are facts sufficient to support an inference of theft.

\* \* \* \* \* \*

"Appellant contends that the federal statutes involved are not applicable when the securities were not stolen in this country. However, the language of the present statute is broad

enough to justify the federal courts in applying the statute whenever they determine that the securities were stolen in another country. We are not here concerned with the unlikely case where the goods or securities might be 'stolen' according to the laws of one of the two countries and yet not be 'stolen' according to the laws of the other country. In the absence of citation of statutes or decisional authority to the contrary, we may presume that these securities would be considered stolen under Canadian law."

On the issue as to whether there is evidence to support the convictions we must view the evidence in the light most favorable to the government. It is not for us to weigh the evidence nor reject inferences properly deducible therefrom. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680; United States v. Shaffer, 7 Cir., 291 F.2d 689, 691. And from our examination of the record we are of the opinion that there is substantial evidence to support reasonable inferences that the securities pledged were a part of and moving in interstate and foreign commerce and that the defendant had knowledge of their stolen character.

The defendant's trips to Montreal, where a large part of the stolen securities were found the day after the theft, immediately preceding each pledge he made of a portion of the stolen bonds in Chicago afford reasonable basis for the jury to infer that such bonds were being brought from Canada to Chicago for disposition—a movement in interstate and foreign commerce. Gable v. United States, 7 Cir., 84 F.2d 929, relied upon by the defendant is inapposite here. In Gable there was no evidence which placed the defendant in the vicinity of the place of the theft, or a place to which proceeds of the theft had been removed, immediately prior to his possession of them and attempt to dispose of them in a different state. In addition, the statute at the time of the offense charged in Gable was limited to situations where the securities had been stolen *while* moving in or constituting a part of interstate or foreign commerce. § 2315 contains no such limitation. Thus, the observation made in United States v. Rocco, D.C. Pa. (1951), 99 F.Supp. 746, 749; aff'd per curiam 193 F.2d 1008, is appropriate here:

"Defendant also attacks his conviction on the ground that the interstate character of the securities had terminated at the times they were sold. Here again, from the circumstances, the jury could infer that he transported or was instrumental in transporting these securities from the place of theft into Pennsylvania for sale at or about the time they were sold. Adapting McNally v. Hill, 3 Cir., 1934, 69 F.2d 38, it is certain that there comes a time in the transportation of stolen securities from one state to another when transportation ceases. If, at that moment, they lose their quality of 'moving as,' or 'which are a part of' or 'which constitute' interstate commerce, then always it would be impossible to enforce the statute against the sale or disposition of stolen securities. Plainly the statute contemplates a situation where the sale is an incident to the theft and transportation which preceded it, and when the sale is so tied up with the interstate transportation in furtherance of the scheme to unlawfully dispose of the stolen securities and constitutes the last step thereof, the characteristic of interstate commerce is preserved and the federal jurisdiction for trying the offense of sale or disposition is maintained."

The record discloses numerous other circumstances, and actions of the defendant, which warranted a reasonable inference that defendant was aware of the stolen character of the securities he pledged in Chicago. Included are the following. There was evidence that defendant withdrew Canadian bonds he had deposited with a banking institution in Zurich, Switzerland, as security tendered

in connection with a loan he sought to obtain, when the bank suggested that a check be made in Canada with respect to the title of the bonds. Although current interest coupons were removed by defendant from bonds he pledged he did not present such coupons for payment. On the occasion of the October 2, 1958, transaction with the Chicago bank the defendant, when questioned as to the source of the Canadian securities, stated that he had received them from his mother's estate. In connection with the attempt to secure a loan at Zurich, and in connection with the pledge of stolen Canadian bonds as security for a loan obtained in Basel, Switzerland, it was represented that the defendant had made millions during the war which he had invested in Canadian securities. On another occasion the defendant stated he had received the bonds as payment for his services to arrange shipment of arms to the Castro forces in Cuba.

We conclude that there was ample evidence, relevant to the offenses charged in the four counts on which the defendant was convicted, to warrant the jury in returning the verdicts it did.

 We are not persuaded by defendant's argument that his prosecution on multiple counts in some of which, including the conspiracy count, others were joined resulted in prejudice which deprived him of a fair trial and violated his right to due process. The joinders of offenses and defendants were proper (Rule 8, Federal Rules of Criminal Procedure). Thus, we are concerned only with whether in the trial of the cause actual prejudice to a substantial right of the defendant resulted from such joinders. Schaffer v. United States, 362 U.S. 511, 80 S.Ct. 945, 4 L.Ed.2d 921. The defendant was acquitted on Counts V, VI and IX. On the record before us there is nothing to indicate that the jury in reaching the verdicts it did improperly considered evidence material

only to the guilt of others or to the proof of other offenses.[2] The verdicts of acquittal support such conclusion. Unlike Krulewitch v. United States, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790 and Dodson v. United States, 6 Cir., 215 F.2d 196, relied upon by defendant, there was no conviction here under a joint or conspiracy count upon which to predicate any contention the convictions were based on evidence of wrongdoing by others and a belief of the jury "that birds of a feather are flocked together". The admonitions contained in those cases have no application here. And the acquittals demonstrate the defendant was not prejudiced by a "transference of guilt"—a danger pointed out in the Kotteakos case [Kotteakos v. United States], 328 U.S. 750, 774, 66 S.Ct. 1239, 1252, 90 L.Ed. 1557—nor by the substitution of the "feeling of collective culpability for a finding of individual guilt" mentioned in United States v. Bufalino, 2 Cir., 285 F.2d 408, 417.

The judgment order of the District Court is affirmed.

Affirmed.

---

2. The evidence as to the Switzerland transactions and concerning the representations made as to the source of the bonds was admissible in connection with the substantive offenses charged in the first four counts. United States v. Wall, 7 Cir., 225 F.2d 905, 907.