Harold S. CROSS, Appellant,

v.

UNITED STATES of America,
Appellee.

John L. JACKSON, Appellant,

v.

UNITED STATES of America,
Appellee.

Nos. 17596–17597.

United States Court of Appeals
District of Columbia Circuit.

Argued Oct. 30, 1963.

Decided March 26, 1964.

---

988

Bastian, Circuit Judge, dissented.

Mr. Leonard Braman, Washington, D. C. (appointed by this court) for appellant in No. 17596.

Mr. James R. Stoner, Washington, D. C. (appointed by this court) for appellant in No. 17597.

Mr. William H. Willcox, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., and Frank Q. Nebeker, Asst. U. S. Atty., were on the brief, for appellee. Mr. Barry Sidman, Asst. U. S. Atty., also entered an appearance for appellee.

Before BAZELON, Chief Judge, and BASTIAN and WRIGHT, Circuit Judges.

BAZELON, Chief Judge.

In a joint indictment, appellants were charged in Count I with robbery of a church rectory on February 23, 1962, and in Count II with robbery of a tourist home on May 2, 1962. Both appellants filed pretrial motions for severance of the counts.[1] The motions were denied.[2] The jury returned verdicts of guilty on Count I and not guilty on Count II. Appellants' chief contention on these appeals is that the District Court erred in refusing to sever the counts for trial.

We need not decide whether the joinder here of two offenses and two defendants was proper under Rule 8 of the Federal Rules of Criminal Procedure, because we think that, in any event, severance of the counts for trial was required by Rule 14.

1. Jackson's motion urged "that each of the two counts charge distinct felonies, not provable by the same evidence and not resulting from the same series of acts" and "that he would be embarrassed and confounded in rendering a proper defense to each of the charges in a single trial before a single jury and would be denied a fair and impartial trial by virtue of the joinder * * *." Cross' motion stated that "if the indictments are tried together since they are in nowise related it will work to the prejudice of the defendant Cross." Oral arguments were also presented to the court.

2. The question of severance arose twice at trial, once just before *voir dire*, and a second time after the Government rested its case. See p. 990, *infra*.

Rule 14 provides:

"If it appears that a defendant * * * is prejudiced by a joinder of offenses * * * for trial together, the court may order an election or separate trials of counts * * * or provide whatever other relief justice requires."

"Therefore, if because of the * * * [joinder] prejudice developed and was not cured by requiring an election or by other relief, material error afflicted the trial. Prejudice. has consistently been held to occur when * * * [joinder] embarrasses or confounds an accused in making his defense. Pointer v. United States, 1894, 151 U.S. 396, 403 [14 S.Ct. 410, 38 L.Ed. 208]; Kidwell v. United States, 1912, 38 App.D.C. 566, 570. See, also, McElroy v. United States, 1896, 164 U.S. 76, 78 [17 S.Ct. 31, 41 L.Ed. 355]." Dunaway v. United States, 92 U.S.App. D.C. 299, 300–01, 205 F.2d 23, 24 (1953). See also Drew v. United States, 118 U.S. App.D.C. ——, 331 F.2d 85.

Prejudice may develop when an accused wishes to testify on one but not the other of two joined offenses which are clearly distinct in time, place and

evidence. His decision whether to testify will reflect a balancing of several factors with respect to each count: the evidence against him, the availability of defense evidence other than his testimony, the plausibility and substantiality of his testimony, the possible effects of demeanor, impeachment, and cross-examination.[3] But if the two charges are joined for trial, it is not possible for him to weigh these factors separately as to each count.[4] If he testifies on one count, he runs the risk that any adverse effects will influence the jury's consideration of the other count. Thus he bears the risk on both counts, although he may benefit on only one. Moreover, a defendant's silence on one count would be damaging in the face of his express denial of the other. Thus he may be coerced into testifying on the count upon which he wished to remain silent.[5] It is not necessary to decide whether this invades his constitutional right to remain silent, since we think it constitutes prejudice within the meaning of Rule 14.

In the present case the appellants did not specify at trial the counts upon which they wished to remain silent and why.

3. "When he takes the stand in his own behalf, he does so as any other witness, and within the limits of the appropriate rules he may be cross-examined as to the facts in issue. He may be examined for the purpose of impeaching his credibility. His failure to deny or explain evidence of incriminating circumstances of which he may have knowledge may be the basis of adverse inference, and the jury may be so instructed. His waiver is not partial; having once cast aside the cloak of immunity, he may not resume it at will, whenever cross-examination may be inconvenient or embarrassing." Raffel v. United States, 271 U.S. 494, 497, 46 S.Ct. 566, 568, 70 L.Ed. 1054 (1926) (citations omitted).

4. "The safeguards against self-incrimination are for the benefit of those who do not wish to become witnesses in their own behalf and not for those who do." Raffel v. United States, *supra* note 3, 271 U.S. at 499, 46 S.Ct. at 568, 70 L.Ed. 1054. But joinder may place the defendant in both categories at once.

5. The Supreme Court said in Adamson v. People of State of California, 332 U.S. 46, 57, 67 S.Ct. 1672, 1678, 91 L.Ed. 1903 (1947):

"When evidence is before a jury that threatens conviction, it does not seem unfair to require him to choose between leaving the adverse evidence unexplained and subjecting himself to impeachment through disclosure of former crimes."

However, a defendant tried for two offenses faces a much more difficult situation: (1) his silence on one count does not prevent impeachment; (2) an inference from his silence on one count is encouraged by his lack of silence on the other. And of course in Federal courts every effort is made to enforce the rule that "the jury * * * must not permit [a defendant's failure to testify] * * * to weigh in the slightest degree against any such defendant * * *." Bruno v. United States, 308 U.S. 287, 292, 60 S.Ct. 198, 199, 84 L.Ed. 257 (1939). See 18 U.S.C. § 3481; Stewart v. United States, 366 U.S. 1, 81 S.Ct. 941, 6 L.Ed.2d 84 (1961).

It does appear that, when the trial court asked Cross whether he wished to testify in his own behalf, Cross answered: "Which case, Your Honor?" During the extended colloquy which followed,[6] Cross repeatedly tried, without his counsel's assistance,[7] to elaborate upon his objections to the joinder. But the court seems to have precluded this by insisting that the issue of joinder had been determined in the pre-trial denial of severance and by demanding a categorical answer to its original query.[8] Thereafter the court applied the same ruling to Jackson.[9]

An examination of Cross' testimony on both counts supports his claim in this court that he wished to testify on Count II and remain silent on Count I. His testimony on Count II was that he was a victim and not a cohort of the armed robbers who entered the tourist home behind him. This testimony, which met the Government's case directly, was so convincing that the jury believed it despite the prosecutor's efforts at cross-examination and impeachment. On Count I, however, his denial was plainly evasive and unconvincing. He testified that he had been drinking heavily and did not know his whereabouts at the time of the church robbery. On cross-examination he was open to questioning concerning his generally tawdry way of life and his prior convictions.

Thus it would appear that Cross had ample reason not to testify on Count I and would not have done so if that count had been tried separately. In a separate trial of that count the jury would not have heard his admissions of prior convictions and unsavory activities;

6. "THE DEFENDANT (Cross): Which case, Your Honor?
"THE COURT: In this case.
"THE DEFENDANT: I mean it's two cases together.
"THE COURT: Well, involving both counts in the indictment here.
"THE DEFENDANT: Yes, but—
"THE COURT: There is just one case but there are two counts in the indictment. I am talking about this trial.
"THE DEFENDANT: Yes.
"THE COURT: And when you take the stand, of course, you will be cross-examined by the government counsel as to both these counts in the indictment * * *.
* * * * * *
"THE COURT: * * * I simply want your answer whether you want to take the stand or not?
"THE DEFENDANT: Well, Your Honor, if the DA—I think it's a great injustice.
"THE COURT: Now I am going to ask you to answer the question directly.
"THE DEFENDANT: Yes, well I want to answer the question directly.
"THE COURT: Do you want to take the stand or do you not want to take the stand?
"THE DEFENDANT: I want to take the stand. I want to know one thing.
"THE COURT: What do you want to know?
"THE DEFENDANT: I think it's an injustice to run both charges together. The charges are independent of one another.
"THE COURT: That is another issue which you will have the right to contest in case the verdict goes against you. A motion has been previously made to separate the counts. A motion was previously made to separate the counts. I heard that motion and I denied that motion. Now if the verdict goes against you, you will have a right to take this case to the Court of Appeals to review that issue. * * * *"

7. Cross alleges that his trial counsel's "representation was unfortunately half-hearted," and that the trial court erred in refusing to consider Cross' objections thereto. But our disposition of the case makes it unnecessary to appraise this claim.

8. Cf. Rule 51: "* * * if a party has no opportunity to object to a ruling or order, the absence of an objection does not thereafter prejudice him."

9. "THE COURT: * * * Now, Mr. Jackson, you heard me speak to Mr. Cross about the effect of the defendant taking the stand, didn't you?
"THE DEFENDANT (Jackson): Yes, sir.
"THE COURT: Now I want to ask you the same questions, in light of what I explained to Mr. Cross, the effect either way of your taking the stand or not taking the stand. After consultation with your attorney, who I understand has discussed this matter fully with you, do you wish to take the stand or do you not wish to take the witness stand in your behalf?"

nor would he have been under duress to offer dubious testimony on that count in order to avoid the damaging implication of testifying on only one of the two joined counts.[10] Since the joinder embarrassed and confounded Cross in making his defense, the joinder was prejudicial within the meaning of Rule 14.

We do not agree with the Government that under Dunaway v. United States, 92 U.S.App.D.C. 299, 205 F.2d 23 (1953), this prejudice must be deemed cured by the acquittal on Count II. In that case three counts of housebreaking and two counts of larceny had been tried together. The trial court directed acquittals on the larceny counts, and the jury acquitted the defendant of one of the housebreaking counts. On appeal, we questioned whether "the jury acquittal, considered either alone or with the directed acquittals of larceny, disposes of the claim of prejudice due to the consolidation." [11] But since it appeared that Dunaway "had a fair choice to take the stand or not uninfluenced to any significant degree by the consolidation," [12] we affirmed the conviction on the ground that no prejudice could be shown. In the present case we

think our discussion of the proceedings below shows that Cross had no such "fair choice" and that the resulting prejudice on Count I was not cured by the acquittal on Count II.

■ The record does not provide so much substantiation for Jackson's claim in this court that he, too, was confounded in his defense by the joinder of counts. But, like Cross, he had no opportunity below to establish his claim.[13] We cannot say that it is meritless. And the record does not foreclose the view that Jackson may have been prejudiced because Cross was coerced by the joinder to testify on Count I. If that count had been severed for trial, the jury would not have heard Cross' self-defeating testimony. It might therefore have given greater credence to Jackson's strong alibi defense.[14] Cross' testimony was offered as a result of the trial court's error in refusing his request for severance of the offenses. Thus the prejudice to Jackson must be deemed to have resulted from the same error. "It would be unjust and illogical to separate the two cases and uphold the judgment as to one defendant and reverse it as to the other." [15]

10. For an analogous quandary faced by a defendant in a state trial, see Meade v. State, 85 So.2d 613, 59 A.L.R.2d 835 (Fla.Sup.Ct.1956) (*en banc*).

11. 92 U.S.App.D.C. at 302, 205 F.2d at 26. We were willing to assume for this purpose that the two guilty verdicts could be considered as one. We cited Castellini v. United States, 64 F.2d 636 (6th Cir. 1933), which held:
    "Nor will it suffice to say that appellant's acquittal upon the counts for making false entries cured the defect of a misjoinder. Such a proposition in the situation before us overlooks the reason for the rule announced in the McElroy Case; i. e., that appellant should not, according to the ancient formula, 'be confounded in the making of his defense.'" 64 F.2d at 638.

12. "We base[d] this judgment on the facts of this case, without intimating any general approval of consolidated trials where it can fairly be said that by reason of the consolidation the accused is deprived of a choice whether

or not to take the stand on any of the charges." 92 U.S.App.D.C. at 302, 205 F.2d at 26.

13. See note 8 *supra.*

14. The same two witnesses gave the same testimony constituting the substance of the Government's case against both appellants. The witnesses were admitted accomplices in the alleged crime; one, and perhaps both, admitted prior convictions. Their credibility was a major issue. To the extent that Cross' testimony lacked credibility, their credibility was strengthened.

15. United States v. Thomson, 113 F.2d 643, 646, 129 A.L.R. 1291 (7th Cir. 1940). Cf. Jones v. United States, (No. 17688, decided Feb. 6, 1964) slip opinion pp. 15–19; United States v. Abrams, 117 U.S.App.D.C. 200, 327 F.2d 898; United States v. Tomaiolo, 249 F.2d 683, 696 (2d Cir.1957); Woods v. United States, 99 U.S.App.D.C. 351, 355–356, 240 F.2d 37, 41–42 (1956) (Bazelon, C.J., concurring in part and dissenting in part), *cert. denied,* 353 U.S. 941, 77 S.Ct. 815, 1 L.Ed.2d 760

We find it unnecessary to discuss the other issues raised on this appeal. The judgments on Count I are vacated and the cases are remanded to the District Court for a new trial on that count.

So ordered.

BASTIAN, Circuit Judge (dissenting).

I would affirm the judgments of the District Court. The evidence as to appellants' guilt under Count 1 of the indictment was overwhelming. The majority require a new trial, however, because they feel that the appellants were confounded in making their defenses by the joinder of the two counts, and thus were prejudiced within the meaning of Rule 14, Federal Rules of Criminal Procedure. I disagree.

Rule 14 provides:

"If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires."

As a general rule, acquittal on one of several counts in an indictment cures any defect of misjoinder under Rule 14, Gornick v. United States, 320 F.2d 325 (10th Cir. 1963), thereby precluding any successful claim of prejudice on appeal. United States v. O'Brien, 319 F.2d 437 (7th Cir. 1963); United States v. Rabin, 316 F.2d 564, 568 (7th Cir. 1963).

Similarly, in Dunaway v. United States, 92 U.S.App.D.C. 299, 205 F.2d 23 (1953), this court rejected a claim of prejudice resulting from consolidation of three indictments in a single trial. The jury there had acquitted the defendant on one charge of housebreaking and convicted him on two others. On appeal, we said [92 U.S.App.D.C. at 302, 205 F.2d at 26]:

"Acquittal on one of several consolidated indictments disposes *pro tanto* of the claim of prejudice. There are cases which indicate it disposes of such claim *in toto*. Beaux Arts Dresses v. United States, 2 Cir., 1925, 9 F.2d 531; United States v. Perlstein, supra [3 Cir., 120 F.2d 276]; Culjak v. United States, 9 Cir., 1931, 53 F.2d 554, 82 A.L.R. 480; Morris v. United States, 9 Cir., 1926, 12 F.2d 727; Latses v. United States, 10 Cir., 1930, 45 F.2d 949. * * * "[1]

In Monroe v. United States, 98 U.S. App.D.C. 228, 234 F.2d 49, cert. denied, 352 U.S. 873, 77 S.Ct. 94, 1 L.Ed.2d 76 (1963), involving appeals from convictions in a trial of multiple defendants on a nineteen-count indictment, we said:

"* * * The jury, as we have seen, acquitted Prather entirely of bribery, Anderson was convicted of three of six charges of bribery, King was convicted of only one of eight charges of bribery, Taylor was convicted of one charge and acquitted of one, and Simkins was convicted of four and acquitted of one. *Thus, the jury was selective.* This at least to some degree indicates that *the jury returned verdicts only upon the basis of evidence relevant to each count and each defendant.* Finnegan v. United States, 8 Cir., 204 F.2d 105, 109–110. The judge specifically warned the jury in this regard * *.

"Furthermore, *the court charged in considerable detail as to the separate substantive counts.* * * * *Judging the situation after the trial,* therefore, as we must do, knowing that all appellants except Monroe and Prather were acquitted of conspiracy, and considering the evidence supporting each separate substantive

(1957); Nelson v. United States, 93 U.S. App.D.C. 14, 23, 208 F.2d 505, 514, cert. denied, 346 U.S. 827, 74 S.Ct. 48, 98 L. Ed. 352 (1953).

1. Cf. Chambers v. United States, 112 U.S. App.D.C. 240, 301 F.2d 564 (1962); Peckham v. United States, 93 U.S.App. D.C. 136, 210 F.2d 693 (1953).

count which resulted in a verdict of guilty, together with the court's full, fair and careful charge, *we may not speculate that the trial actually led to any conviction which would not have occurred except for the consolidated trial.* Dunaway v. United States, supra. While the danger of which the Supreme Court warned in Blumenthal v. United States, supra, 332 U.S. at 559, 68 S.Ct. at page [248] 257, 92 L.Ed. 154, that evidence might be transferred to one to whom it does not apply, must be constantly in mind in permitting and in reviewing joint trials—a danger 'likely to arise in any conspiracy trial and more likely to occur as the number of persons charged together increases' —we think the conclusion reached in Blumenthal that prejudice did not occur should also be reached here." 98 U.S.App.D.C. at 237, 234 F.2d at 58. [Emphasis supplied.]

In the instant case, the trial judge specifically charged the jury:

"Each of these two counts must be considered separately against each defendant on the sworn testimony before you in this case."

He then accurately, fairly and in some detail summarized for the jury the evidence and contentions of the parties with regard to each defendant on each count of the indictment.

Moreover, a typewritten form was given to the jury on which to record its verdict. The form set out the name of each defendant, and required a separate notation by the jury as to its decision on each of the two counts relating to that defendant; hence the verdict form was a constant reminder to the jury during its deliberations that each count was to be considered separately as to each defendant.

In these several ways the jury was apprised of its responsibility to consider each count and defendant separately.

At the conclusion of his charge, the trial judge asked of counsel if there were "anything further," to which counsel for Cross replied (out of the presence of the jury):

"Your Honor, I think you have covered every aspect of it."

Counsel for Jackson agreed.[2]

That the jury acquitted the defendants on one count while convicting on the other demonstrates that it did, in fact, consider the evidence as it related to each count separately.

I am of the opinion that the circumstances of this case correspond to those outlined in *Monroe, supra,* and that the same conclusion should obtain here. The verdict reached in this case, and the careful delineation by the court of the details of each of the two counts in the indictment precludes a holding that the defendants were prejudiced by the joining of the defendants and the counts in the indictment.[3]

With regard to Jackson, it is said that a new trial is required because Jackson's alibi might have been given greater credence if Cross's "self-defeating testimony" as to count 1 had not been heard by the jury. However, the mere fact that self-defeating testimony has been given by one defendant, which is not evidence as against the other, is not a proper basis for a finding of prejudice requiring reversal. Cf. Dykes v. United States, 114 U.S.App.D.C. 189, 313 F.2d 580 (1962); Carter v. United States, 108 U.S.App.D.C. 277, 281 F.2d 640 (1960); United States v. Schaffer, 266 F.2d 435, 440–443 (2d Cir. 1959); Stewart v. United States, 94 U.S.App.D.C. 293, 294, n. 3, 214 F.2d 879, 880, n. 3 (1954); Robinson v. United

---

2. Counsel expressed the wish, however, that the jury be told that the fact that the priest who was robbed died moments after the robbery was not to be considered in determining the guilt or innocence of the defendants. The judge complied, and thereafter counsel for both parties agreed.

3. Drew v. United States, 118 U.S.App. D.C. ——, 331 F.2d 85, specifically avoided passing on the narrow question decided by the majority here. See note 6 of that opinion.

**994**

States, 93 U.S.App.D.C. 347, 349, 210 F. 2d 29, 31 (1954); Hall v. United States, 83 U.S.App.D.C. 166, 168, 168 F.2d 161, 163, cert. denied, 334 U.S. 853, 68 S.Ct. 1509, 92 L.Ed. 1775 (1948); Lucas v. United States, 70 App.D.C. 92, 93, 104 F.2d 225, 226 (1939). See Schaffer v. United States, 362 U.S. 511, 80 S.Ct. 945, 4 L.Ed.2d 921 (1960).

I would affirm the convictions.