**Tyrone A. HORTON, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 11102.**

District of Columbia Court of Appeals.

Submitted June 22, 1977.

Decided Aug. 8, 1977.

---

David G. Whitworth, Jr., Upper Marlboro, Md., appointed by this court, was on the brief for appellant.

Earl J. Silbert, U. S. Atty., Washington, D. C., with whom John A. Terry, James N. Owens and Steven D. Gordon, Asst. U. S. Attys., Washington, D. C., were on the brief for appellee.

Before NEWMAN, Chief Judge, and KELLY and MACK, Associate Judges.

KELLY, Associate Judge:

Appellant Horton's convictions of robbery, armed rape, assault with intent to commit sodomy while armed, armed kidnaping, assault with intent to commit mayhem, armed robbery, obstruction of justice and assault with a dangerous weapon,[1] were based on the facts which follow.

On February 21, 1976, appellant and a friend robbed James Rodwell at his apartment after the three men had some drinks together. Rodwell reported the robbery to the police but a warrant for appellant's arrest never issued. Appellant later apologized to Rodwell, whom he had known for three to four years, and said he was trying to return the stolen goods.

---

1. D.C. Code 1973, §§ 22–2901; –2801, –3202; –503, –3502, –3202; –2101, –3202; –502; –2901, –3202; –703; and –502 respectively.

On March 16, appellant, Rodwell, two other men and a juvenile were again drinking at Rodwell's apartment when appellant accused Rodwell of having obtained a warrant for his arrest for the February 21 robbery. An argument ensued, and appellant and his two friends assaulted Rodwell and his friend James Smith with knives, feet, fists and a dog chain. Unfortunately, Rodwell's common-law wife arrived at the apartment during this episode. Appellant and his companions decided to rape and orally sodomize Ms. Smith, which they did in front of Rodwell. A discussion followed about whether they should kill Rodwell and the two Smiths, but appellant and his cohorts contented themselves with spraying insect spray into the victims' eyes in an attempt to blind them. After robbing Rodwell, the three departed, taking Ms. Smith with them. They took her to a deserted house where two of them again raped and sodomized her. Ms. Smith was finally released and she staggered home at 3:00–4:00 a.m. on the morning of March 17. Rodwell and Ms. Smith reported these offenses to the police and arrest warrants issued for appellant and one friend, Robert Spurlock.

On March 25, Rodwell and Ms. Smith were watching television at a friend's apartment when appellant and two juveniles arrived at the door and accused Rodwell of having obtained a warrant for appellant's arrest. Before Rodwell could close the door against him, appellant managed to cut Rodwell's hand with a knife. Appellant stood outside the door with his cohorts yelling for Rodwell to come out. When Rodwell refused to do so, they pretended to pour gasoline through the door and set the apartment on fire. Meanwhile one of the apartment's occupants had climbed out the window to summon the police, who arrived after appellant had fled the scene.

■ Appellant first argues that the court erred in refusing to sever the counts pertaining to the separate dates of the alleged offenses. The grant of a motion for severance is a matter wholly within the discretion of the court, however, and a ruling on such a motion will be reversed on appeal only upon a clear showing of abuse of discretion. *Arnold v. United States*, D.C. App., 358 A.2d 335, 339 (1976) (en banc); *Hurt v. United States*, D.C.App., 314 A.2d 489, 491–92 (1974). The argument here is that there was such an abuse because appellant was prejudiced in four ways: (1) he was confounded or embarrassed in preparing his defenses because he wished to present an alibi defense as to the events of March 16–17 but did not wish to testify about the February 21 or March 25 incidents; (2) the jury could infer his guilt as to one crime from evidence of the others; (3) the jury might cumulate evidence from separate crimes to find guilt; and (4) the evidence as to one of the offenses was so weak that its primary usefulness was to support the government's case as to the other charges. Appellant relies primarily on *Drew v. United States*, 118 U.S.App.D.C. 11, 331 F.2d 85 (1964); *Gregory v. United States*, 125 U.S.App.D.C. 140, 369 F.2d 185 (1966), *on remand*, 133 U.S.App.D.C. 317, 410 F.2d 1016, *cert. denied*, 396 U.S. 865, 90 S.Ct. 143, 24 L.Ed.2d 119 (1969).

As to the last allegation of prejudice, appellant does not specify which offense is useful only to support the government's case, but the claim is without merit in any event because of the strong evidence presented as to each.

■ The second and third allegations of prejudice are dispelled where evidence of the offense is mutually admissible at separate trials and where the evidence of each offense is sufficiently simple and distinct so as not to confuse the jury. *Bell v. United States*, D.C.App., 332 A.2d 351, 353 (1975). Both circumstances are presented here. All of the charged offenses stemmed from the February 21 robbery. The events on March 16–17 originated from appellant's accusation that Rodwell had sworn out a warrant for his arrest in connection with the February robbery, and escalated into the brutal beatings and the rape. The March 25 offense also began when appellant sought out Rodwell and again accused him of obtaining an arrest warrant. All offenses flowed each from the other and evidence of each

would have been admissible in separate trials to show motive, intent and identity. *Drew v. United States, supra*, 118 U.S.App. D.C. at 16, 331 F.2d at 90. Furthermore, the evidence as to each offense was simple and distinct, consisting as it did of victim accounts corroborated by eyewitness testimony. The jury was quite capable of separating each offense in its own mind.

·In support of his claim that he was confounded in presenting his defenses appellant cites *Cross v. United States*, 118 U.S. App.D.C. 324, 335 F.2d 987 (1964). In *Cross*, two separate robbery offenses were tried together. Despite the fact that the defendant was acquitted of one, the circuit court decided it was prejudicial error to try the two together where they were distinct as to time, place and evidence and the defendant wished to present an alibi defense as to one count and remain silent on the other. The prejudice, it was said, lies in the fact that once on the stand the defendant could be impeached and cross-examined as to the other offense, or may be forced to testify about unfavorable implications arising from silence in contrast to express denials.

In this case, however, as we have pointed out, evidence of the several crimes would have been admissible in separate trials and appellant would have been questioned on all offenses had he taken the stand. In such a situation joinder of offenses promotes judicial economy without unduly infringing the rights of the accused. *See Hurt v. United States, supra; United States v. Leonard*, 144 U.S.App.D.C. 164, 445 F.2d 234 (1971). Accordingly, the court did not abuse its discretion in refusing to sever, by date, the counts with which appellant was charged.

■ Appellant's claim that he received ineffective assistance of counsel is groundless. Far from the gross ineptitude which "in effect blotted out the essence of a substantial defense", *Woody v. United States*, D.C.App., 369 A.2d 592, 593–94 (1977), *quoting Bruce v. United States*, 126 U.S.App.

D.C. 336, 339–40, 379 F.2d 113, 116–17 (1967), the record reveals that counsel was prepared for trial, cross-examined the witnesses thoroughly and presented an effective closing argument. His refusal to present the alibi witnesses appellant wished to call accorded fully with our opinion in *Thornton v. United States*, D.C.App., 357 A.2d 429, 437–38, *cert. denied*, 429 U.S. 1024, 97 S.Ct. 644, 50 L.Ed.2d 626 (1976).[2] There was no deprivation of appellant's Sixth Amendment rights.

The convictions appealed from are

*Affirmed.*

---

2. The proposed testimony of the alibi witnesses was contradictory and the Assistant United States Attorney prosecuting this case indicated to counsel that he would move for a grand jury indictment for perjury if the witnesses took the stand and told the stories they had told him.