Roy A. LEASURE, Charles F. Perkins, Appellants,

v.

UNITED STATES, Appellee.

Nos. 81-854 and 81-1074.

District of Columbia Court of Appeals.

Argued Dec. 2, 1982.

Decided March 11, 1983.

As Amended April 22, 1983.

Carol Garfiel Freeman, Glen Echo Heights, appointed by this court, for appellant Leasure.

Russell F. Canan, Washington, D.C., appointed by this court, for appellant Perkins.

Thomas P. Murphy, Asst. U.S. Atty., with whom Stanley S. Harris, U.S. Atty. and Michael W. Farrell, John R. Fisher, and Richard C. Otto, Asst. U.S. Attys., Washington, D.C., were on the briefs, for appellee.

Before KERN, PRYOR and BELSON, Associate Judges.

PER CURIAM:

■ A jury convicted appellants of multiple offenses [1] arising out of the robbery, rape and murder of one person and the robbery and murder of another at two separate places within the time span of several hours—all taking place within the District of Columbia. Appellants advance several contentions, only two of which merit discussion.[2]

■ Appellants contend that the trial court erred in refusing to sever the trial of the offenses committed against the victim Whipple from the trial of the offenses inflicted upon the victim LaRoach. We first note that, for the purpose of efficient use of judicial resources, a presumption exists favoring the joint trial of offenses properly joined and that a trial judge's decision on

---

1. Appellants Perkins and Leasure were both found guilty of felony murder committed in the course of a robbery, D.C.Code § 22–2401 (1981), and robbery, D.C.Code § 22–2901 (1981), in connection with the homicide of Gloria Whipple. Leasure was convicted additionally of felony murder committed in the course of a rape, D.C.Code § 22–2401 (1981), and rape, D.C.Code § 22–2801 (1981). (These will be referred to collectively as the "Whipple counts.") Both appellants were convicted of first degree premeditated murder, D.C.Code § 22–2401 (1981), felony murder committed in the course of a burglary, D.C.Code § 22–2401 (1981), first degree burglary, D.C.Code § 22–1801 (1981), felony murder committed in the course of a robbery, D.C.Code § 22–2401 (1981), and robbery, D.C.Code § 22–2901 (1981), arising from the homicide of George LaRoach. Leasure was convicted also of sodomy, D.C.Code § 22–3502 (1981), in connection with this murder. (These counts will be referred to collectively as the "LaRoach counts.")

2. The contention that the trial court abused its discretion in admitting into evidence the photographs of the decedent LaRoach at the scene of his murder is without merit given the fact that the photos had probative value in confirming the identity of the victim, *Faunteroy v. United States*, 413 A.2d 1294, 1299 (D.C.1980), the location of the offense, *Pittman v. United States*, 375 A.2d 16, 19 (D.C.1977), the cause of death, *Harried v. United States*, 128 U.S.App.

D.C. 330, 336, 389 F.2d 281, 287 (1967), and appellants' malice and premeditation, *Womack v. United States*, 339 A.2d 37, 38 (D.C.1975).

The admission of the post-mortem photograph of Mrs. Whipple was probative in that it identified the victim, *Faunteroy v. United States, supra,* and showed the extent of her injuries. *Harried v. United States, supra.* Given that these photographs have probative value and are not introduced solely to inflame the jury, *Faunteroy v. United States, supra,* 413 A.2d at 1299, their admission was well within the trial court's discretion.

The trial court did not err in denying appellants' motions for acquittal of charges of rape and felony murder (rape) at the conclusion of the government's case. There was ample evidence from which a reasonable juror "*could find guilt beyond a reasonable doubt.*" *Crawford v. United States,* 126 U.S.App.D.C. 156, 158, 375 F.2d 332, 334 (1967) (emphasis in original); *accord Fox v. United States,* 421 A.2d 9, 13 (1980). Specifically, there was the testimony of the police officer as to what Mrs. Whipple had said at the scene of the crime, the testimony of the nurse and physician who examined and talked with the victim at the hospital following the attack, the testimony of two witnesses, each of whom participated in one of the sexual attacks but who testified for the government, and certain physical evidence presented by various expert witnesses.

this issue will be reviewed only for abuse of discretion. *Johnson v. United States,* 398 A.2d 354, 367 (D.C.1979). In this case, because the government presented each of the two cases against appellants in a discrete manner so that there was no overlap in the testimony of the prosecution witnesses, because the trial court carefully instructed the jury to consider and decide the two cases separately from each other, and because the government was careful in its argument to the jury not to mingle evidence about each of the two cases, we are persuaded that there was not any so-called prejudicial "spill-over" from trying the two cases together. In short, "the evidence as to each offense [was kept] separate and distinct, and thus [was] unlikely to be amalgamated in the jury's mind into a single inculpatory mass . . . ." *Bridges v. United States,* 381 A.2d 1073, 1075 (D.C.1977), *cert. denied,* 439 U.S. 842, 99 S.Ct. 135, 58 L.Ed.2d 141 (1978).

In addition, "the evidence of each of the joined crimes would be admissible in a separate trial of the others." *Id.* We note that the two offenses took place within several hours of each other at locations relatively proximate to each other within the city and that they clearly appeared to be a part of a crime spree engaged in by appellants, commencing with several criminal incidents occurring before the attacks which are at issue here took place. The trial court held, and we agree, that evidence of each crime would have been admissible in a separate trial of the other offenses to establish intent or, more precisely, the absence of innocent presence at the various stages of this criminal spree. *See Drew v. United States,* 118 U.S.App.D.C. 11, 16, 331 F.2d 85, 90 (1964); *accord Bridges v. United States, supra,* 381 A.2d at 1075.

■ Finally, appellant Perkins argues, citing *Cross v. United States,* 118 U.S.App.

D.C. 324, 335 F.2d 987 (1964), that as a consequence of the joinder of the two murders into one trial, he would have been "embarrassed and confounded" in presenting testimony in his defense on the first murder and then attempting to remain silent on the second murder.[3]

In essence, appellant Perkins claims that the government evidence against him on the Whipple murder was equivocal and hence dictated that he should take the stand and testify in his own defense, whereas the evidence against him on the LaRoach murder was substantial, indicating that his best strategy on those counts was to refrain from testifying. We are not persuaded by this argument in light of the decision in *Horton v. United States, supra* note 3. There, we held that in the case of two offenses joined together for trial, if the evidence presented by the government as to each of the joined offenses would be admissible in the trial of the other offense, then the rule expressed in *Cross* would *not* come into play. 377 A.2d at 393. Applied to the instant case, if the evidence against appellant Perkins concerning his participation in the LaRoach murder was admissible as evidence against him in the Whipple murder, then appellant Perkins could not be embarrassed and confounded in testifying about the Whipple murder by the fact that both murders were tried together. As we have explained, the government in the instant case could properly present to the jury evidence of the participation by appellant Perkins with appellant Leasure in the murder of the victim LaRoach in order to disprove the contentions by appellant Perkins that, although he was present at the scene of the Whipple murder, his presence was innocent.

■ Both appellants also argue that it was error to admit into evidence the testi-

**3.** In *Cross,* the federal appeals court found joinder of two separate robberies for trial unduly prejudicial where one codefendant wished to testify as to the first robbery but remain silent on the second. The facts of *Cross* show, however, that the two crimes in that case were separated in time by more than two months and that evidence of each crime would *not* have been mutually admissible in separate trials of the two offenses. *Cross v. United States, supra,* 118 U.S.App.D.C. at 327–28, 335 F.2d at 990–91. *See Horton v. United States,* 377 A.2d 390, 393 (D.C.1977).

mony of the police officer who came upon the victim Whipple immediately after she had been attacked and the testimony of the nurse tending to her serious physical injuries after she was transported to the hospital subsequent to the attack. Both the police officer and the nurse testified that the victim had stated that she had been raped. Because the victim later died as a result of her injuries she was of course unable to testify herself at the trial of appellants.[4]

■ The testimony of these two witnesses was admitted as a spontaneous utterance exception to the hearsay rule, *Nicholson v. United States,* 368 A.2d 561, 564 (D.C.1977), and appellants concede that two of the three prongs of the test for admitting spontaneous utterances set forth in *Nicholson* were met: first, there had been a serious occurrence which caused the declarant to be in a state of nervous excitement and physical shock and, second, the declaration was made by the victim Whipple both to the police officer and to the nurse within a reasonably short time after the attack upon her.

Appellants vigorously argue, however, that the third prong was not satisfied—that the incident had certain characteristics which called into question the sincerity and spontaneity of Mrs. Whipple's remarks.

More specifically, appellants suggest that the evidence strongly supports the inference that Mrs. Whipple lost consciousness during the attack and was unable, therefore, to know whether, after the beating, she in fact had been raped or had been sexually abused without penetration.[5]

We acknowledge, upon the evidence adduced, that it is *possible* to infer that Mrs. Whipple lost consciousness at some point during the attack. We conclude, however—in the absence of any direct evidence as to her state of consciousness, whether she ever completely lost consciousness, and if she did, for how long she remained unconscious—that the question did not affect the admissibility of the evidence, but was one properly left for the jury to consider in deciding what weight to attach to Mrs. Whipple's statements. *See Nicholson v. United States, supra,* 368 A.2d at 564; *United States v. Glenn,* 154 U.S.App.D.C. 61, 65, 473 F.2d 191, 195 (1972) (per curiam).

■ We are satisfied upon review of the record and consideration of the arguments by appellants that the judgments of conviction must stand. However, at oral argument appellants asserted that, based on our holding in *Doepel v. United States,* 434 A.2d 449, 459 (D.C.), *cert. denied,* 454 U.S. 1037, 102 S.Ct. 580, 70 L.Ed.2d 483 (1981), it was

4. The trial court ruled at the trial that the victim's statement that she had been raped would be inadmissible. The government, with leave of the trial court, appealed the court's ruling pursuant to D.C.Code § 23–104(d) (1981). This court, upon consideration of the briefs, argument and record, reversed the trial court and thereafter the testimony of the victim's statement that she had been raped was admitted into the evidence.

Despite this court's previous consideration of the spontaneous utterance issue in the interlocutory appeal, that ruling does not "affect the right of the defendant, in a subsequent appeal from a judgment of conviction, to claim as error reversal by the trial court on remand of a ruling appealed from during trial." D.C.Code § 23–104(e) (1981). Thus, we are not bound by ordinary principles of the "law of the case." *But see, M.A.P. v. Ryan,* 285 A.2d 310 (D.C. 1971).

5. Appellants maintain that the other circumstances of the attack are also not inconsistent

with a charge of sexual abuse other than rape. Among these circumstances are a boast by appellant Leasure to his companions after the incident concerning the nature of his attack on Mrs. Whipple, the evidence of an area in the vicinity to which Leasure dragged Mrs. Whipple where the dirt and grass were watered down and spattered with blood, the evidence of dirt and grass on her buttocks and inside her vaginal vault and the evidence that she suffered bruising of her genitalia and inner thighs. We note that these circumstances also are *not* inconsistent with forced sexual intercourse. We note further that Mrs. Whipple's mental condition when she made the statements in issue was *not* hysterical or otherwise delirious. On the contrary, both the officer at the scene and the attending nurse at the hospital testified that, although Mrs. Whipple obviously was severely injured, she was calm, responsive, and apparently rational.

improper to impose either concurrent or consecutive sentences for felony murder and the underlying felony.[6] In the government's brief, at p. 3 note 2, it was conceded that appellants should not have received sentences for both rape and felony murder (rape). In post-argument briefings on the subject the government now has conceded further that the underlying felony merges into the murder conviction, not only for rape but for all of the felony-murder charges. Accordingly, given appellants' request and the government's concession, we vacate all convictions of rape, robbery and burglary, which underlay and merged into felony-murder convictions.

*So ordered.*

---

6. Appellants' brief raised the issue with regard to the rape; at oral argument, they extended their assertion to the robbery and burglary.