

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-21-1998

# United States v. Ellis

Precedential or Non-Precedential:

Docket 97-1368,97-1369

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

Recommended Citation

"United States v. Ellis" (1998). *1998 Decisions.* Paper 229.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/229

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed September 21, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NOS. 97-1368 and 97-1369

UNITED STATES OF AMERICA

v.

CARL D. ELLIS,
Appellant
(D.C. Crim. No. 95-cr-00435-4)

UNITED STATES OF AMERICA

v.

ESTER L. CARTER
Ester Carter,
Appellant
(D.C. Crim. No. 95-cr-00435-5)

On Appeal From the United States District Court
For the Eastern District of Pennsylvania

Argued: March 19, 1998

Before: BECKER, Chief Judge, RENDELL and
HEANEY* Circuit Judges.

(Filed September 21, 1998)

_____

*Honorable Gerald W. Heaney, United States Circuit Judge for the
Eighth Circuit, sitting by designation.

TIMOTHY P. BOOKER, ESQUIRE
  (ARGUED)
117 N. 15th Street, Suite 1702
Philadelphia, PA 19102

Attorney for Appellant Carl D. Ellis

MARK S. GREENBERG, ESQUIRE
  (ARGUED)
Stephen Robert LaCheen and
  Associates
3100 Lewis Tower Building
15th and Locust Streets
Philadelphia, PA 19102

Attorney for Appellant Ester Carter

MICHAEL R. STILES, ESQUIRE
United States Attorney
WALTER S. BATTY, JR., ESQUIRE
Assistant United States Attorney
Chief of Appeals
MAUREEN BARDEN, ESQUIRE
  (ARGUED)
Assistant United States Attorney
WILLIAM B. PETERSEN, ESQUIRE
Assistant United States Attorney
615 Chestnut Street - Suite 1250
Philadelphia, PA 19106-4476

Attorneys for Appellee
United States of America

OPINION OF THE COURT

BECKER, Chief Judge.

Ester Carter appeals from a judgment of the district court convicting him of one count of conspiracy to launder drug trafficking proceeds in violation of 18 U.S.C. S 1956(h) and two counts of money laundering in violation of 18 U.S.C. S 1956(a)(3)(b).1 Carter's conviction was one of several that

_____

1. Carter was sentenced to a prison term of 48 months, a fine of $30,000, and 3 years supervised release.

arose out of a government undercover operation in which Special Agent Louis Oubre of the Internal Revenue Service posed as a drug dealer named "Louis Richard." The background facts are set forth at length in our opinion in United States v. Nolan-Cooper, Nos. 97-1171 and 97-1298 (3d Cir. filed September 1, 1998) and in the district court's opinion denying Carter's Rule 29 motion. See United States v. Carter, 966 F. Supp. 336 (E.D. Pa. 1997).

The principal issue on the present appeal is whether the district court committed prejudicial error when it admitted two statements by Angela Nolan-Cooper, who was Carter's attorney and was also an alleged coconspirator, pursuant to Fed. R. Evid. 801(d)(2)(E). In addition, Carter challenges the district court's failure to charge the jury with his proposed money laundering instruction, and the limits the court placed upon his cross-examination of Agent Oubre. Because all of these challenges are without merit, we will affirm.[2]

I. The Coconspirator Statements

Carter first argues that the district court erred in allowing the government to introduce two statements made by Nolan-Cooper that were contained in tape recorded conversations she had with Agent Oubre on February 7 and 9, 1994. The challenged statements were made by Nolan-Cooper during her initial two meetings with Agent Oubre. At these meetings Oubre explained that he was a drug dealer and needed assistance in making it appear that his drug proceeds came from a legitimate source.

In the first challenged statement, Nolan-Cooper explained to Oubre how he could launder the drug proceeds by investing in a recording studio run by one of her "clients" (Carter does not dispute that he was the person about whom Nolan-Cooper was speaking):

> I have someone who's in a very similar situation with
> you ... that ... has a recording studio.... In South
> Jersey.... I'll be very honest with you. He has been in

_____

2. We exercise jurisdiction pursuant to 28 U.S.C. S 1291 and 18 U.S.C. S 3231.

it and he's lost money.... He's lost money because he was involved with somebody he shouldn't have been involved with.... But even in losing the money... it's helped him to legitimize everything else.... So he hasn't had any problems. And he's another person that I'm back and forth. I do the same thing with him.... So I mean, that's the one thing that's already established here, if you wanted to become an investor in something like that....

[App. 244-45].

In the second recorded conversation, Nolan-Cooper again discussed with Oubre the possibility of investing in Carter's recording studio:

[T]he gentleman who's still involved ... in this business now, ... he started out, he bought some bars ... and he put the poker machines ... and he has made millions and millions of dollars on those poker machines... in his bars. And he doesn't show for it, if you saw him... and, I mean, he's an older man. He's just in his sixties .... he drives around in a 1971 Chevy Impala.... He wears old clo[thes] ... you would never think ... but he was very smart true old man.

[App. 248-49]

It is not seriously disputed that, prior to the events leading to the present indictment, a money laundering operation had been established involving at least Nolan-Cooper and Carter, whereby Carter's recording studio was used to launder the proceeds of illegal gambling (video-poker) activities.[3] The evidence also established that the recording studio was later used as a false address in order to legitimize a sham corporation set up by Nolan-Cooper to launder Agent Oubre's purported drug proceeds, and that, to this end, Carter and Oubre both signed a backdated lease, and Carter accepted "rent" payment totaling several thousand dollars. The office space was never used by Oubre.

---

3. At all events, such a conclusion is supported by a preponderance of the evidence.

4

Fed. R. Evid. 801(d)(2)(E) excepts from the definition of hearsay "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." In order for an out-of-court statement to be admissible pursuant to Rule 801(d)(2)(E), the district court must find by a preponderance of the evidence that: (1) a conspiracy existed; (2) the declarant and the party against whom the statement is offered were members of the conspiracy; (3) the statement was made in the course of the conspiracy; and (4) the statement was made in furtherance of the conspiracy. See United States v. McGlory, 968 F.2d 309, 333-34 (3d Cir. 1992). Where the district court finds that a conspiracy existed, we review the district court's findings as to these elements for clear error. See United States v. Cruz, 910 F.2d 1072, 1081 n.11 (3d Cir. 1990).

While the district court offered alternative bases for its decision to admit the challenged statements, and the ultimate basis for its decision is not entirely clear, we find the core of the court's reasoning to be contained in findings of fact made at the conclusion of the government's case. There, in accordance with the requirements set forth in McGlory, the district court, in essence, found that the statements were admissible since they were made during the course and in furtherance of a conspiracy that existed in February 1994 among Nolan-Cooper, Carter, and others to launder the proceeds of illegal transactions. See Carter, 966 F. Supp. at 347. We conclude, based on our review of the record, that these findings are not clearly erroneous and thus that the statements were properly admitted.

We pause, however, to consider the effect of a different view of the evidence urged upon us by Carter. According to Carter, when Nolan-Cooper made these statements in February 1994, there was at best a conspiracy in place solely to launder video poker money. He claims that in February 1994 he had not yet authorized Nolan-Cooper to extend the conspiracy to launder the proceeds of illegal drug activity, and that he did not give this authorization until his first conversation with Agent Oubre on March 11, 1994. Thus, in Carter's view, there were two different conspiracies -- one the charged conspiracy to launder drug proceeds, and the other a conspiracy to launder video poker

5

proceeds. Based on this view, he contends that it was clearly erroneous for the district court to have admitted these statements because they were made in the course of and in furtherance of a conspiracy that was not charged in his indictment. While we agree with Carter that, for analytic purposes, the continuum of events might be viewed as containing two conspiracies, adopting such a view would not change the result.

The law is well settled that out-of-court statements may be admissible under Rule 801(d)(2)(E) even if the defendant is not formally charged with any conspiracy in the indictment. See United States v. Trowery, 542 F.2d 623, 626 (3d Cir. 1976); United States v. Godinez, 110 F.3d 448, 454 (7th Cir. 1997); United States v. Rivera, 68 F.3d 5, 7 (1st Cir. 1995). Thus, so long as the requirements set forth in McGlory are satisfied (as they are here), Nolan-Cooper's statements to Oubre are non-hearsay regardless of whether they were made in a conspiracy separate from that charged. See United States v. Arce, 997 F.2d 1123, 1128 (5th Cir. 1993) ("[t]he conspiracy that forms the basis for admitting coconspirators' statements need not be the same conspiracy for which the defendant is indicted"). 4 Of course, not all nonhearsay is admissible in court -- only that which is relevant -- and thus the introduction of statements from an uncharged conspiracy might be precluded by application of Article IV of the Federal Rules of Evidence. Cf. In re Japanese Elec. Prods. Antitrust Litig., 723 F.2d 238, 263 (3d Cir. 1983) ("Rule 402 affords adequate protection against admission of statements in furtherance of joint undertakings that are remote and unrelated to the conspiracy relied upon as a basis for liability."), rev'd on other grounds sub nom., Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986).

_____

4. The cases relied on by Carter, Anderson v. United States, 417 U.S. 211 (1974), and Krulewitch v. United States, 336 U.S. 440 (1949), are inapposite, as they applied the pre-Federal Rules common law of evidence, which did include a requirement that the coconspirator's statement be made in furtherance of a charged conspiracy. See Anderson, 417 U.S. at 218. Rule 801(d)(2)(E) contains no such explicit requirement and, as noted in the text, courts (including this one) have uniformly read the Rule as not containing such a requirement.

In this vein, some courts require that in order for a coconspirator statement to be admitted, the conspiracy during which the statements were made must be "factually intertwined" with the offenses being tried. See United States v. Stratton, 779 F.2d 820, 829 (2d Cir. 1985); United States v. Kendall, 665 F.2d 126, 131 (7th Cir. 1981). In our view, this salutary additional requirement is essentially a restatement of ordinary relevancy principles. Since the challenged statements are relevant to the crimes charged, we hold that they were properly admitted even if Carter's characterization of the evidence is correct.5

II. Cross-Examination of Agent Oubre

The second error raised on this appeal concerns the cross-examination of Agent Oubre. Oubre was called to the stand solely for the purpose of authenticating various tape recordings of conversations he had with Nolan-Cooper and other alleged co-conspirators. After the government's direct examination of Oubre, Carter and his co-defendant, Carl Ellis, moved to cross examine Oubre concerning the district court's earlier finding that he had testified falsely at a hearing concerning possible "outrageous government conduct" in the course of the investigation.6 Carter argued

_____

5. We also agree with the district court's conclusion that even if it were error to have admitted the statements under Rule 801(d)(2)(E), such error was harmless. Harmless error is "[a]ny error, defect, irregularity or
variance which does not affect substantial rights." Fed. R. Crim. P. 52(a).
An error is harmless when we are certain "that the error did not prejudice the defendant[ ]," United States v. Jannotti, 729 F.2d 213, 220 n.2 (3d Cir. 1984), and can say that it is "highly probable" that the district court's errors did not contribute to the conviction. See Government of Virgin Islands v. Toto, 529 F.2d 278, 284 (3d Cir. 1976).

Here, the government offered overwhelming evidence of Carter's guilt at trial. Indeed, much of the evidence came from Carter's own mouth, as several of his conversations were recorded by Agent Oubre. We must therefore conclude that even if the court had erred in admitting Nolan-Cooper's statements, it is "highly probable" that their admission did not contribute to the conviction.

6. For a fuller discussion of the alleged "outrageous government conduct" engaged in by Agent Oubre, see Nolan-Cooper, Nos. 97-1171 and 97-1298 (3d Cir. filed September 1, 1998).

that he should he be permitted to cross-examine Oubre in this manner on the ground that Oubre would be biased in favor of the government because his earlier false testimony could subject him to criminal charges.

The district court sustained the government's objection to this line of inquiry on the ground that the proffered cross-examination exceeded the scope of direct examination and did not involve matters of credibility, see Fed. R. Evid. 611(b), and on the basis that its probative value was substantially outweighed by the danger of unfair prejudice, see Fed. R. Evid. 403. We review the court's decision to limit cross-examination for abuse of discretion, see United States v. Casoni, 950 F.2d 893, 902 (3d Cir. 1991), and find none.

Fed. R. Evid 611(b) limits the scope of cross examination "to the subject matter of the direct examination and matters affecting the credibility of the witness." Fed. R. Evid. 611(b). It is clear that the proposed questioning by Carter exceeded the very limited scope of Agent Oubre's direct examination. Carter nonetheless argues that it is permissible under Rule 611(b) since Agent Oubre's credibility was at issue. We disagree. Before trial, Carter waived his right to a Starks hearing and stipulated that the tape recordings made by the government during the undercover operation were accurate, authentic, and correct. Because Oubre testified only as to the foundational basis required to admit the recordings, his testimony was undisputed and his credibility was not at issue.

The district court also concluded that the proposed questioning of Agent Oubre was precluded on the basis of Fed. R. Evid. 403, which grants the district court discretion to exclude evidence if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." Fed R. Evid. 403. The district court reasoned that, because Oubre's testimony was limited to authenticating the tapes and Carter had stipulated as to the authenticity of the recordings, any questioning regarding the agent's potential bias would be of little or no probative value. On the other hand, the court reasoned that "the proffered cross-examination questions would have had a tendency to inflame the jury resulting in

8

significant prejudice." Carter, 966 F. Supp. at 353. The court concluded, therefore, that "the probative value of the proffered cross-examination is substantially outweighed by the danger of unfair prejudice." Id. Because Oubre's testimony was limited to authenticating the tape recording, the district court did not abuse its discretion under either Rule 611(b) or Rule 403 in prohibiting the proposed line of questioning.7

_____

7. Carter's final contention is that he was denied a fair trial when the district court refused to give a jury instruction that he requested regarding the "intent to conceal" element of the money laundering charge. This argument is patently without merit.

When charging the jury, the district court must provide it with "a clear articulation of the relevant legal criteria." United States v. Goldblatt, 813 F.2d 619, 623 (3d Cir. 1987). However, determining the specific language used is within the sound discretion of the district court and will be reviewed only for an abuse of discretion. See id. A jury instruction does not constitute reversible error if the instruction "fairly and adequately" presents the issues in the case without confusing or misleading the jury. See United States v. Simon, 995 F.2d 1236, 1243 n.11 (3d Cir. 1993) (citations omitted). Nor is a defendant entitled to a jury instruction of his own choosing. See United States v. Salerno, 66 F.3d 544, 549 (3d Cir. 1995).

Since Carter's primary defense to the money laundering charge was that his actions in dealing with Agent Oubre were so open and notorious that he did not have the requisite intent to conceal or disguise the source of Oubre's "drug money," he requested a money laundering instruction that underscored the government's burden of proof in this regard. The district court concluded that Carter's proposed instruction was merely "redundant in emphasizing the intent element of the crime" and instead opted to give the jury instruction proposed by the government on this issue (which did explain the government's burden). That instruction, in relevant part, required the jury to find that:

. . . the defendant conducted a financial transaction with the intent
to conceal or disguise the nature, location, source, ownership, or
control of the property which defendant believed to be the proceeds
of the buying, selling and dealing in narcotic and dangerous drugs.

Carter, 966 F. Supp. at 350. Since this instruction clearly articulated the relevant legal criteria and fairly and adequately presented the issues of the case, we conclude that the court's failure to tender Carter's requested instruction did not constitute an abuse of discretion.

The judgment of the district court will be affirmed.

A True Copy:
Teste:

       Clerk of the United States Court of Appeals
       for the Third Circuit