**UNITED STATES of America,**

v.

**Troy NESBITT, Appellant.**

No. 02–2522.

United States Court of Appeals,
Third Circuit.

Argued Nov. 14, 2002.

Decided Dec. 16, 2002.

Martial A. Webster, [Argued], Russell & Webster, Frederiksted, St. Croix, USVI, for Appellant.

Tracey Christopher, [Argued], Office of U.S. Attorney, Christiansted, St. Croix, USVI, for Appellee.

Before SCIRICA, ALITO and RENDELL, Circuit Judges.

## OPINION OF THE COURT

RENDELL, Circuit Judge.

Troy Nesbitt appeals his conviction for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(2001), on the grounds that the District Court erroneously admitted video and audio recordings of conversations between Nesbitt's codefendant, Owen Luma, and a Confidential Source, erroneously admitted evidence arising out of his arrest, and abused its discretion when it denied Nesbitt's motion for severance. Nesbitt also claims that there was insufficient evidence to convict. We will affirm on all grounds.

### Jurisdiction and Standard of Review

The District Court of the Virgin Islands had jurisdiction under 18 U.S.C. § 3241 (2001) and 48 U.S.C. § 1612 (2001), and we exercise jurisdiction pursuant to 28 U.S.C. § 1291 (2002). We review the District Court's findings of fact for clear error, *United States v. Ellis,* 156 F.3d 493, 496 (3d Cir.1998), and its decisions on the admissibility of evidence for abuse of discretion. *Bhaya v. Westinghouse Elec. Corp.,* 922 F.2d 184, 187 (3d Cir.1990). We exercise plenary review over the District Court's determination of probable cause. *United States v. Harple,* 202 F.3d 194, 196 (3d Cir.1999). We review the District Court's denial of Nesbitt's pre-trial motion to sever for abuse of discretion as to those issues raised before the Court, and plain error as to those issues raised here for the first time. *United States v. Hart,* 273 F.3d 363, 369, 371 (3d Cir.2001). Finally, we review challenges to the sufficiency of the evidence in the light most favorable to the verdict. *Id.* at 371.

Nesbitt and Owen Luma were jointly tried for various illegal actions arising out of the sale of a firearm and crack cocaine to John Sauer, a Confidential Source. Nesbitt's sole remaining conviction is for being a felon in possession of a firearm.

In October 1999, Owen Luma became acquainted with John Sauer, a documented confidential source for the Virgin Islands Police Department and the High Intensity Drug Trafficking Area ("HIDTA") Task Force in St. Croix. Luma offered to sell Sauer guns and drugs and to procure prostitutes for him. Sauer arranged to meet with Luma on November 5 to purchase crack cocaine and a gun. When Luma did not show up for the meeting, Sauer called him, and the conversation was recorded by

law enforcement. During the course of the conversation, Luma mentioned another man who was reluctant to go through with the transaction.

Sauer and Luma agreed to meet the next day, November 6. They met at St. Croix by the Sea, where Luma was a security guard. A video and audio recording was made of that meeting. When he arrived at the designated place, Sauer parked his car at the top of a hill and opened his trunk. Luma was parked at the bottom of the hill, near some bushes. Luma motioned for Sauer to come down the hill, but when Sauer refused, Luma walked up and put the gun, a Mac–11, and crack cocaine in Sauer's car. Sauer noticed that the gun was missing the clip and asked Luma for it. Luma waved down to another person who came out of the bushes and drove Luma's car up the hill. This person was later identified as Nesbitt.

When Nesbitt got to the top of the hill, Luma asked him for the clip. Nesbitt cursed at Luma, then reversed the car back down the hill, got out and went into the bushes, returned to the car, and drove back up the hill. Luma got into the passenger side of his car. Sauer reached into the driver's side of the car and was handed the clip. Then Nesbitt and Luma drove away.

On November 9, Sauer and Luma had another telephone conversation, again recorded by law enforcement. During that conversation, Luma told Sauer that his "partner didn't like the way de transaction went down." Sauer then asked Luma about ammunition for the gun. Luma replied that the clip had been full but his partner "removed it, cause he didn't trust." Luma said he didn't know if the partner would give Luma the ammunition, because the partner had just gotten out of jail and

didn't want to go back. Sauer never received the ammunition.

Luma was arrested on January 26, 2000. During a post-arrest interview with Detective Howell, Luma confessed to selling the gun and crack to Sauer. Luma identified the second occupant of the vehicle as "Head," and then picked out a photo of Nesbitt from a photo array. Luma stated he had dug up the gun from where a deceased friend had buried it, that Nesbitt had been keeping the gun at his house prior to the sale, and that on the morning of the sale, Nesbitt had the weapon when Luma picked him up at his house.

Nesbitt was arrested without a warrant, and during a post-arrest interview with Detective Howell, Nesbitt admitted that he was the second person in Luma's car, and that he was present when the firearm and drugs were sold. He stated that he had held the gun briefly, just to look it over. He also admitted that he transported the clip up to Luma to complete the sale. He denied receiving any money from the sale of the gun.

Nesbitt and Luma were charged in a Second Superseding Indictment on seven counts relating to the gun and drug sale to Sauer, and to the discovery of marijuana on Nesbitt's person during a search incident to his arrest. The District Court denied Nesbitt's motion to sever his trial from Luma's, finding that most of the charges arose out of the same facts and that Nesbitt would not be prejudiced by a joint trial. Nesbitt moved to suppress the evidence arising out of his arrest. After a hearing, the Court denied the motion, finding that probable cause existed and that Nesbitt's confession had been voluntary.

A jury trial commenced in January 2001, but was declared a mistrial because of the admission of an unfairly prejudicial gov-

ernment surveillance tape.[1] A second trial began in March 2001. At trial, the Court admitted the video and audio recordings of Luma and Sauer's conversations. Sauer, Detective Howell, Luma, and Nesbitt all took the stand. Nesbitt was adjudged guilty of being a felon in possession of a firearm and of possessing a firearm with an obliterated serial number. He was acquitted of possessing marijuana with intent to distribute.

Nesbitt then filed a motion for judgment of acquittal and/or a new trial based on the inadmissibility of the recordings and insufficiency of the evidence. The Court dismissed the obliterated serial number conviction, finding that the indictment had not alleged knowledge and was therefore deficient. The Court denied the motion as to the felon in possession conviction, finding that the recordings were properly admitted under Federal Rule of Evidence 801(d)(2)(E), that they were not unfairly prejudicial under Rule 403, and that there was sufficient evidence for a reasonable juror to find Nesbitt guilty beyond a reasonable doubt.

## Discussion

### 1. The Video and Audio Recordings

Nesbitt argues that the video and audio recordings and transcriptions were improperly admitted because the statements were hearsay and did not fall under the Rule 801(d)(2)(E) exception for statements made by a coconspirator in furtherance of a conspiracy, and that the recordings were unfairly prejudicial under Rule 403. We find no error in the District Court's ruling that the recordings were admissible under

801(d)(2)(E) and were not unfairly prejudicial.

Under Rule 801(d)(2)(E), a statement is not hearsay if it is made by a coconspirator during the course and in furtherance of the conspiracy. Under this rule, a district court must find by a preponderance that: "(1) a conspiracy existed; (2) the declarant and the party against whom the statement is offered were members of the conspiracy; (3) the statement was made in the course of the conspiracy; and (4) the statement was made in furtherance of the conspiracy." *Ellis*, 156 F.3d at 496. Statements may be admissible under 801(d)(2)(E) even if the defendant has not been formally charged with any conspiracy. *Id.* at 497. District courts may consider the statements themselves when determining whether a conspiracy existed, *Bourjaily v. United States*, 483 U.S. 171, 181, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987), but may not rely solely on those statements. *See* Fed. R.Evid. 801(d)(2). Where the district court finds that a conspiracy existed, we review the court's findings as to these elements for clear error. *Ellis*, 156 F.3d at 496.

■ The District Court's finding that the recorded conversations were made during the course and in furtherance of a conspiracy was not clearly erroneous. Nesbitt argues that he was never charged with conspiracy, and that the District Court's finding that the statements were made in furtherance of a conspiracy was based solely on the statements themselves.[2] However, as noted, Nesbitt did not have to be formally charged with a

---

1. That tape was not admitted at the second trial.

2. Nesbitt also cites to *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) (holding that admission in joint trial of one defendant's out-of-court confession violat-

ed his co-defendant's Sixth Amendment right to confront witnesses). However, he never alleges a *Bruton* violation, and in fact could not establish one, as both defendants took the stand and were subject to cross-examination.

conspiracy for the Court to find by a preponderance that he participated in one for purposes of 801(d)(2)(E). *Ellis,* 156 F.3d at 497. And, the District Court did not rely solely on the recordings to find a conspiracy. Although the Court did consider Luma's statements to Sauer, it also relied on Detective Howell's report of Luma's confession, in which Luma identified Nesbitt as the second person at the gun sale and stated that Nesbitt had been keeping the gun at his house and had it with him when Luma picked him up the morning of the sale. The Court also considered Nesbitt's own admission that he had been present during the sale and had heard Sauer ask for the clip, and Sauer's testimony that Nesbitt had passed him the clip. Given this additional evidence, the Court's finding that there was a conspiracy between Nesbitt and Luma to sell the gun and that Luma's remarks were made in furtherance of that conspiracy was not clearly erroneous.

Nesbitt also argues that the conspiracy, if it existed, was completed upon the sale of the gun, and that Luma's statements to Sauer on November 9 were therefore not "during the course" of the conspiracy. The District Court did not differentiate among the three conversations, but we note that there was evidence that after the sale, there were discussions regarding ammunition, thus supporting the continuing nature of the conspiracy.

■ Further, the District Court did not abuse its discretion when it found that the recordings were not unfairly prejudicial under Federal Rule of Evidence 403. Nesbitt baldly asserts that the jury "undoubtedly" relied on something other than reliable evidence but fails to show how any of the evidence unfairly prejudiced him.

Rule 403 requires the exclusion of evidence whose probative value is substantially outweighed by the danger of unfair prejudice. Any evidence suggesting guilt is "prejudicial;" a court is only required to exclude evidence that would "persuade by illegitimate means." *United States v. Blyden,* 964 F.2d 1375, 1378 (3d Cir.1992).

In support of his contention that he was unfairly prejudiced, Nesbitt quotes extensively from the government's cross-examination of Luma, in which the government referenced the recorded conversations. He also reiterates arguments that he makes in the Rule 801(d)(2)(E) and severance contexts, and relies on evidence that tends to prove Nesbitt's innocence. However, as the District Court noted, Nesbitt fails to identify how the cross-examination or the recordings unfairly prejudiced Nesbitt. The government was free to use Luma's prior statements to impeach his testimony on the stand. The recordings were highly probative, and Nesbitt was not unfairly prejudiced just because the evidence tended to prove his guilt. Therefore, the District Court did not abuse its discretion when it admitted the recordings and allowed the cross-examination based on them.

## 2. Probable Cause to Arrest

Nesbitt argues that there was no probable cause for his warrantless arrest, and that therefore his post-arrest confession should be suppressed.[3] Probable cause exists where the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a reasonable person to believe an offense had been committed. *United States v. McGlory,* 968 F.2d 309, 342 (3d Cir.1992). We review the

---

**3.** At the suppression hearing, Nesbitt also argued that his confession was involuntary and that he had never received his *Miranda* warnings. However, Nesbitt has not presented that argument on appeal.

District Court's finding of probable cause de novo, and its factual findings for clear error. *Harple*, 202 F.3d at 196. We find that there was probable cause.

■ The government clearly had probable cause to arrest Nesbitt. At the hearing held by the District Court on Nesbitt's motion to suppress, the government established that the arresting officer acted on information from Detective Howell. Detective Howell testified that surveillance of the November 6 controlled purchase of cocaine and a gun from Luma revealed a second individual in Luma's car. The surveillance tape showed Luma motion to that second person to bring the clip for the gun, and then showed that second person hand the clip to Sauer. Upon Luma's arrest, Luma identified that second individual as "Head," and then picked Nesbitt out of a photo array. This is ample evidence to show probable cause to believe that Nesbitt was involved in the gun sale.

■ Because they had probable cause, the officers were authorized to arrest Nesbitt in public without a warrant. "Law enforcement authorities do not need a warrant to arrest an individual in a public place as long as they have probable cause to believe that person has committed a felony." *McGlory*, 968 F.2d at 342. Nesbitt was arrested at a public place, Cora's Place, a restaurant, and thus the officers did not need a warrant.

3. Severance

Nesbitt urges that the District Court abused its discretion when it denied his motion to sever his trial from that of Owen Luma. In his Rule 14 severance motion, he stated that the joint trial would severely affect his chances for a fair trial. He then joined in Luma's severance motion, contending that a joint trial was not proper because the two defendants shared only one charge in common and because it was unclear whether the government would call the defendants to testify against each other. The District Court denied the motions, finding that the charges were based on the same set of facts and involved the same witnesses, that there were no antagonistic defenses, and that the "speculative fear" that the government would call the defendants to testify against each other did not rise to clear prejudice.

On appeal, Nesbitt does not address the arguments raised below or quarrel with the District Court's ruling on these points. Instead, he raises new arguments: 1) the recorded conversations would not have been admissible in a separate trial and were unfairly prejudicial; 2) the prosecutor used the recorded conversations to suggest that Nesbitt was recently out of jail; 3) Nesbitt was forced to testify on both the marijuana and the gun sale charges when in a separate trial he would only have had to testify regarding the marijuana charge; 4) the Court failed to provide limiting instructions; and 5) in a separate trial, Nesbitt would have been able to call Luma as an exculpatory witness.

■ When to sever a trial is left to the sound discretion of the courts and will not be reversed absent "clear and manifest prejudice" resulting in an unfair trial. *Hart*, 273 F.3d at 370. Because Nesbitt did not raise these arguments before the District Court, we review for plain error, which requires an error, that is plain, and that affected Nesbitt's substantial rights. *Id.* at 371. We find no error and no prejudice.

First, as stated above, the recorded conversations were admissible against Nesbitt and were not unfairly prejudicial. Nesbitt cannot show any prejudice from the joint trial on this account. Furthermore, Nesbitt had already stipulated to being a felon,

therefore any suggestion that he was recently out of jail was not prejudicial.

Second, Nesbitt claims that he desired to testify only on the marijuana charge, but that joinder with Luma forced him to testify on both the gun and the marijuana charges and that this forced testimony was prejudicial. He relies on *Cross v. United States*, 335 F.2d 987, 989 (D.C.Cir.1964), which held that "[p]rejudice may develop when an accused wishes to testify on one but not the other of two joined offenses." *See also United States v. Lewis*, 787 F.2d 1318, 1323 (9th Cir.1986) (finding prejudice where evidence of prior crime was admitted on one count but would have been inadmissible on the other). In *Cross*, the Court of Appeals for the District of Columbia Circuit held that joinder of two offenses was prejudicial where the defendant had repeatedly tried to object to joinder and register his willingness to testify on one count and not the other, and where his testimony on one count was convincing but his testimony on the second was plainly evasive and opened him up to questioning concerning prior convictions. *Id.* at 327.

Nesbitt's reliance on *Cross* is misplaced. First, the procedural posture here is different. Nesbitt never moved to sever the counts against him, only to sever his trial from Luma's. Even in a separate trial, the government could have joined the two counts. Second, unlike the defendant in *Cross*, whose testimony on one count opened him up to a credibility attack and to the admission into evidence of prior convictions, Nesbitt has not shown how his testimony regarding the marijuana or the gun sale prejudiced him. He carries the burden of proving prejudice. His testimony was that he was present but did not participate in the sale. If anything, this testimony is exculpatory. He certainly was not harmed by testifying.

Third, the Court's failure to provide limiting instructions was not plain error. Nesbitt states that he made "numerous" requests for limiting instructions, but he does not cite to the record nor could we find any evidence of these requests. Nesbitt also does not indicate what exactly he would have wanted included in such limiting instructions. As it was not raised, the Court's failure to give limiting instructions is reviewed for plain error. Given that the evidence Nesbitt finds objectionable was admissible against him and not unfairly prejudicial, and the evidence that clearly did not apply to Nesbitt (evidence about Luma's prostitution business and the sale of the crack) was easily compartmentalized, it was not error for the Court not to include limiting instructions.

Finally, Nesbitt argues that in a separate trial he would have been able to call Luma to provide exculpatory testimony. However, Luma did testify and did provide exculpatory evidence, therefore there was no prejudice.

4. Sufficiency of the Evidence

Lastly, Nesbitt argues that the verdict was not supported by the weight of the evidence. Our review of a jury verdict is highly deferential; we must determine whether the evidence viewed in the light most favorable to the government would allow a rational trier of fact to convict. *Hart*, 273 F.3d at 371. The evidence here was sufficient.

 Nesbitt marshals the evidence on his side, including his own assertion of innocence and Luma's trial testimony that Nesbitt was not involved, and argues that the jury based its verdict solely on the "unfairly prejudicial" recorded conversations. As the District Court pointed out, the recorded conversations were competent, admissible evidence that the jury could consider. In the conversations,

Luma indicated numerous times that he had a partner. Luma later identified Nesbitt as his partner. Furthermore, Nesbitt admitted that he was present during the gun sale, Sauer testified that Nesbitt handed him the clip, and Detective Howell testified that Luma said Nesbitt had been keeping the gun before the sale. The jury is charged with evaluating the credibility of the witnesses and was free to give more weight to Sauer and Howell's testimony than to Nesbitt's professions of innocence.

### Conclusion

For the reasons stated above, we will affirm Nesbitt's conviction.