**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-3496
_____

UNITED STATES OF AMERICA

v.

JOSE ANTONIO SANTIAGO,
                                          Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
District Court No. 2-05-cr-00032-003
District Judge: The Honorable Juan R. Sánchez


Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
March 30, 2012

Before:  FUENTES, SMITH, and JORDAN, *Circuit Judges*

(Filed: April 30, 2012)


_____

OPINION
_____



SMITH, *Circuit Judge.*


1

Jose Santiago was tried, convicted, and sentenced for: conspiracy to commit hostage taking, in violation of 18 U.S.C. § 1203(a); hostage taking, in violation of 18 U.S.C. §§ 1203(a) and 2; and using a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §§ 924(c) and 2. Santiago appeals his judgment and sentence. We will affirm.

I.[1]

Prior to October 8, 2004, Santiago and co-defendants Alexis Villegas and Angel Mejia agreed to kidnap Carlos Correa ("Correa"). The co-defendants sought to obtain $1 million in ransom from Gustavo and Rosemary Correa (respectively "Gustavo" and "Rosemary"), who were Correa's parents and successful restaurateurs. Both Mejia and Villegas had previously worked at the Correas' diner and knew Correa.

Early in the morning of October 8, 2004, Mejia and Villegas broke into Correa's home, brandished firearms, and forced Correa into their vehicle. Mejia and Villegas drove Correa to Santiago's home. The co-defendants then forced Correa into Santiago's shed at gunpoint, blindfolded him, and locked the shed door. The co-defendants met inside Santiago's home, discussed ransom plans, and then Mejia and Villegas returned to their respective homes, leaving Santiago to watch Correa. Villegas, using Correa's cell phone, called Rosemary and told her that they had her son and demanded a ransom of $1 million. Rosemary contacted the West Chester, Pennsylvania police department. Co-defendants placed a series of ransom calls to Rosemary and Gustavo during the period of

---

[1] "After a jury verdict, we review the facts in the light most favorable to the verdict." *United States v. Jimenez*, 513 F.3d 62, 69 (3d Cir. 2008).

October 8-10.

The parties agreed to conduct the ransom exchange in the evening of October 10 at a specified bridge. The co-defendants tied Correa's hands and feet, blindfolded him, and forced him into Mejia's car at gunpoint. Mejia, who was armed, drove towards the prearranged location. Santiago and Villegas, both of whom were also armed, drove separately in Santiago's car. Once they were in the vicinity of the bridge, Villegas exited Santiago's car and entered Mejia's car. Santiago drove away to conduct counter-surveillance. As Mejia's car neared the bridge, Villegas exited and hid nearby. Gustavo, accompanied by two law enforcement officers, waited in a car on the other side of the bridge. Mejia untied Correa, ordered him to sit on a bridge guardrail, and instructed Gustavo to drive forward with the money. As Gustavo drove forward, Mejia fired his gun in the general direction of Correa. The FBI SWAT team responded, and Mejia drove off while firing at the agents. The officers secured Correa and arrested Mejia after a brief car chase. From Mejia's car, the officers recovered a handgun and a cell phone, both of which Santiago purchased.

When the shooting occurred, Villegas fled by running into a creek. Santiago drove to meet Villegas and took him to Santiago's house. On October 11, agents executed a search warrant at Santiago's home. Both Santiago and Villegas were arrested. The agents recovered a handgun from Santiago's pants. The agents found two other guns in the bedroom where Santiago and Villegas slept. These three guns and the gun recovered from Mejia's car were registered to Santiago. The agents found Correa's cell

phone inside Santiago's car.[2]

Prior to trial, the District Court granted Santiago's motion for the production of Correa's computer hard drive. Santiago alleged that Correa accumulated significant gambling debts and that information from the hard drive would likely support Santiago's theory that Correa staged his own kidnapping in order to obtain ransom money to cover those debts.

Tami Loehrs, Santiago's computer forensics expert, reviewed Correa's hard drive and drafted a memorandum of her results. Loehrs found various files indicative of child pornography and emails suggesting that Correa had solicited prostitutes, several online poker applications, miscellaneous financial information, a video game titled "River City Ransom," and a reference to a website that included the words "A Little Kidnapping Never Hurt Anyone."

The government moved to limit any cross-examination regarding Correa's possession of child pornography to issues bearing on Correa's potential bias (e.g., whether Correa was cooperating with the government to avoid criminal charges). Santiago countered that, pursuant to Fed. R. Evid. 404(b), he should be permitted to question Correa as to evidence of his possession of child pornography, solicitation of prostitutes, and gambling. Santiago argued that this evidence supported his revised theory that Correa staged his own kidnapping to cover his expenses related to gambling and his sexual interests. The government disputed this theory, noting that there was no

---

[2] Both Mejia and Villegas pled guilty to various counts related to kidnapping Correa.

evidence that Correa was in significant debt.

On August 18, 2008, a hearing was held on the government's motion to limit cross-examination of Correa. Santiago's counsel conceded at this hearing that Correa was "not in debt" and that there was no evidence he had a gambling problem. Santiago argued, however, that the evidence from Correa's hard drive demonstrated a sex addiction. Santiago asserted that although Correa was solvent, he still had a financial motive to stage his own kidnapping because the evidence from the hard drive demonstrated an escalating pathology for viewing pornography and frequenting prostitutes. In sum, Santiago argued that Correa needed additional money to feed his growing sexual addiction. The District Court agreed, at Santiago's request, to reserve ruling on the government's motion until defense counsel obtained a report from a psychologist opining on Correa's alleged sex addiction.

On August 25, 2008, Dr. Timothy Foley, Santiago's expert psychologist, issued a report. Dr. Foley—based on his review of Correa's emails, Internet history, financial records, and Loehrs's forensic analysis—concluded that there was substantial support for finding that Correa exhibited "sexually addictive" behavior and "compulsive use of the Internet" prior to his abduction in October 2004. Notably, Dr. Foley did not interview Correa and could not conclude that Correa had a sex addiction. Dr. Foley was also unable to determine the amount of money that Correa spent on his sexual conduct or whether Correa's income was insufficient to support that conduct.

On August 29, 2008, following jury selection for Santiago's trial, the government moved to preclude Dr. Foley's testimony. The government argued that Dr. Foley's

testimony was not relevant because there was no evidence that Correa's sexual conduct caused financial distress. The government also argued that Dr. Foley's testimony would be unduly prejudicial because it was intended to inflame and mislead the jury. Santiago countered that Dr. Foley's testimony was probative of Correa's purported motive because Dr. Foley would "explain that people do extreme things because of sex."

The District Court, pursuant to Fed. R. Evid. 403, granted the government's motions, limiting the cross-examination of Correa regarding child pornography to issues bearing on Correa's potential bias and precluding other evidence concerning Correa's sexual history, conduct, or preferences. The court reasoned that an inquiry into the explicit details of the child pornography found on Correa's computer would be "misleading, unfairly prejudicial, confusing to the jury, and irrelevant, substantially outweighing any probative value." Dkt. # 220 at n.1. Similarly, the court excluded the other evidence of Correa's sexual conduct and preferences because Santiago failed to demonstrate that the "probative value outweigh[ed] the substantial prejudice of such inflammatory, confusing, and misleading evidence." *Id.* Thus, the court limited Santiago's cross-examination of Correa's sexual behavior to the following: "the fact that child pornography was found in Correa's personal computer, that the local and federal governments did not bring criminal charges against Correa, that Correa understood the minimum and maximum penalties of the potential criminal charges, and any benefit or leniency Correa may receive for testifying." *Id.*

Near the close of the government's case, Santiago announced his intention to call Loehrs as an expert witness. Santiago's counsel proffered that Loehrs would testify

about certain items found on Correa's computer, namely "the gambling portion," Correa's ability to communicate anonymously through certain software, and that Correa purportedly erased certain files. The government countered that such testimony was not relevant. On September 9, 2008, the District Court, pursuant to Fed. R. Evid. 402 and 403, denied Santiago's request to present Loehrs's testimony because it was not relevant or probative to the issue of whether Correa staged his kidnapping and the jury may be "confused by the evidence of erasure and misled into concluding that Correa's crimes or character are material to its judgment in this case." Dkt. # 231 n.1.

During Santiago's case-in-chief, he again sought to call Loehrs as an expert witness. Santiago made a new proffer, stating that Loehrs would testify about what she found on Correa's computer related to: gambling; financial information (e.g., Correa's communications with prostitutes); "anonymizing" software; a reference to the "River City Ransom" video game; a reference to a website that included the words "A Little Kidnapping Never Hurt Anyone"; and certain information regarding pornography and child pornography. The government moved to preclude this testimony. On September 11, 2008, the District Court granted the government's motion, precluding Loehrs from testifying because: Correa's gambling was not relevant because Santiago failed to demonstrate a connection between Correa's gambling and a motive to stage his own kidnapping; Correa's financial statements were inadmissible hearsay; testimony as to Correa's use of "anonymizing" software was previously excluded in the court's September 9 Order; the textual reference to a website referring to kidnapping and the video game were highly prejudicial and outweighed any probative value; and evidence of

Correa's membership to pornographic websites was irrelevant without any evidence linking his memberships to monetary expenditures. Dkt. # 234 n.1.

The jury convicted Santiago of conspiracy to commit hostage taking, hostage taking, and use of a firearm in relation to a crime of violence. The District Court sentenced Santiago to 319 months' imprisonment. Santiago timely appealed.

## II.[3]

### A.

Santiago argues that the District Court violated his Sixth Amendment right to confront Correa by precluding cross-examination as to his alleged sex addiction. We disagree.[4]

Although the Confrontation Clause "guarantees a criminal defendant the right to confront witnesses on cross-examination, a district court retains wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about . . . harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *United*

---

[3] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have appellate jurisdiction under 28 U.S.C. § 1291.

[4] We review a district court's "limitation on cross-examination for abuse of discretion." *United States v. Silveus*, 542 F.3d 993, 1005 (3d Cir. 2008); *see also United States v. Kellogg*, 510 F.3d 188, 191 (3d Cir. 2007). Santiago asserts that *de novo* review is applicable because, *inter alia*, the District Court erred in placing the burden under Rule 403 on Santiago. It is immaterial as to which standard we apply because Santiago cannot prevail under the more generous *de novo* standard.

8

*States v. Jimenez*, 513 F.3d 62, 76 (3d Cir. 2008) (quotation marks omitted).

Courts often rely on Rule 403 when limiting cross-examination. Under Rule 403, courts may exclude relevant evidence if its "probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury."

The District Court did not err in limiting Correa's cross-examination pursuant to Rule 403. Santiago sought to demonstrate that Correa's sexual conduct created a financial motive to stage the kidnapping. However, there was no evidence that Correa was in debt or that Correa's income was insufficient to satisfy his sexual activities. Further, we are not persuaded by Santiago's reliance on Correa's emails claiming to be "broke." Correa made those claims while negotiating prices with prostitutes. As the potential purchaser, Correa had the incentive to understate his ability to pay. Consequently, the context of Correa's claims that he was "broke" eviscerates any serious probative value. In sum, without a connection between Correa's sexual activities and his financial condition, evidence of Correa's sexual conduct has little probative value for demonstrating a financial motive to stage the kidnapping.[5]

Similarly, the District Court did not err in concluding that unfair prejudice or the risk of jury confusion would substantially outweigh the minimal probative value of such cross-examination. Evidence of Correa soliciting prostitutes and viewing pornography would likely inflame the jury. Moreover, Correa's sexual proclivities were not on trial

---

[5] Restricting Santiago's cross-examination of Correa's sexual conduct was reasonable and did not completely preclude Santiago from demonstrating a financial motive. For example, Santiago was able to cross-examine Correa generally about his financial status and expenditures without referencing the exact nature of those expenditures.

and the introduction of such extensive evidence on cross-examination would likely mislead and confuse the jury as to the central issues in the case.[6] Accordingly, the District Court did not err by limiting Correa's cross-examination under Rule 403.

B.

The District Court did not abuse its discretion by precluding the expert testimony of Dr. Foley and Loehrs.[7] As to Dr. Foley, Santiago proffered that he would have testified that the "contents of Correa's computer were consistent with sex addiction and that sex addicts, like other addicts, will go to extreme means to satisfy their addictions." Appellant's Br. at 86. Dr. Foley's report concluded generally that Correa's sexual conduct "consumed much of [his] time and resources . . . to the exclusion of other activities." We agree with the District Court that Dr. Foley's testimony would have had only minimal probative value. Dr. Foley did not interview Correa and could not

---

[6] Contrary to Santiago's assertions, district courts may exclude probative evidence pursuant to Rule 403 in criminal cases based on concerns that the government will be unfairly prejudiced. *See, e.g.*, *Jimenez*, 513 F.3d at 76 (holding that the district court did not abuse its discretion by relying on Rule 403 to limit cross-examination of the government's witness); *United States v. Ellis*, 156 F.3d 493, 497-98 (3d Cir. 1998) (same); *United States v. Boyer*, 694 F.2d 58, 60 (3d Cir. 1982) (same).

10

determine the amount of money, if any, Correa spent when accessing pornographic websites or hiring prostitutes. Similarly, Dr. Foley's report did not conclude that Correa needed additional revenue to maintain or increase his sexual activities. Dr. Foley also did not conclude that Correa's income prior to the kidnapping was insufficient to satisfy his sexual interests. Because Dr. Foley was unable to directly link Correa's sexual conduct to a motivation for additional income, Dr. Foley's testimony would have had minimal probative value. Dr. Foley's testimony would likely have unfairly prejudiced the government's prosecution by inflaming and misleading the jury as discussed *supra* in Section II.A. Thus, the District Court did not abuse its discretion by excluding Dr. Foley's testimony under Rule 403.

Moreover, the District Court did not abuse its discretion by precluding Loehrs from testifying. Santiago asserts that Loehrs would testify about: (1) the video game titled "River City Ransom" and a reference to a webpage containing the phrase "A Little Kidnapping Never Hurt Anyone"; (2) evidence that Correa was "broke"; and (3) Correa's gambling.

---

[7] We review a district court's preclusion of expert testimony for abuse of discretion. *United States v. Mitchell*, 365 F.3d 215, 233 (3d Cir. 2004).

Santiago asserts that our review should be *de novo* because the District Court failed to conduct an on-record balancing of the 403 factors. We are not persuaded. The District Court's Order limiting cross-examination, when read in context with the court's on-record statements made at oral argument, demonstrates that the District Court considered and weighed the probative value of the evidence against any unfair prejudice or confusion that the cross-examination might cause. *See, e.g.*, *United States v. Sriyuth*, 98 F.3d 739, 745 n.9 (3d Cir. 1996) (stating that we apply an abuse of discretion standard where evidence is excluded under Rule 403 unless the court fails to explain its grounds for excluding the evidence and its reasons for doing so are not apparent from the record).

As to the video game and webpage, Loehrs could testify only as to their respective titles and could not provide a description of their content. In the instant circumstances, the titles, without more, are not relevant because they do not have a tendency to make any fact at issue more or less probable than it would be without the title evidence. *See, e.g.*, Fed. R. Evid. 401(a). The jury would be left to speculate as to the content of the game or the website, and thus, the District Court did not err in excluding this evidence.

As to Correa's financial condition, Loehrs would testify that Correa, while soliciting sex through e-mails, represented on several occasions that he was "broke." As discussed *supra* Section II.A, we agree with the District Court that the context of these representations—haggling over prices—diminishes any probative value. The District Court also did not err in concluding that the probative value of this evidence was substantially outweighed by the dangers of unfair prejudice (i.e., inflaming the jury) and misleading the jury (i.e., placing Correa's character on trial). *See, e.g.*, Fed. R. Evid. 403.

Finally, as to Correa's gambling issues, Loehrs would testify that Correa had access to multiple gambling websites and that he maintained spreadsheets tracking his gambling performance. However, Correa admitted on direct examination that he played poker for money and gambled in Atlantic City, New Jersey. Santiago questioned Correa on cross-examination about his gambling, including gambling websites and spreadsheets. Although there was evidence that Correa enjoyed gambling, Santiago did not produce any evidence that Correa had any significant gambling debts or that his gambling activities caused financial distress. Santiago failed to establish a connection between Correa's gambling and his alleged motive to stage his kidnapping. Consequently,

Loehrs's testimony on the gambling was not relevant under Rule 401. Thus, the District

Court did not abuse its discretion in precluding Loehrs from testifying.[8]

---

[8] Santiago's three remaining issues are meritless. First, the District Court did not abuse its discretion, *Silveus*, 542 F.3d at 1005, by denying Santiago the opportunity to conduct recross-examination of Correa, Rosemary, and Villegas. District courts have wide discretion to restrict recross-examination, especially when no new matters were raised on redirect. *United States v. Riggi*, 951 F.2d 1368, 1374-75 (3d Cir. 1991). Here, the government did not raise any new matters on redirect warranting recross-examination.

Second, the District Court did not abuse its discretion, *United States v. Hakim*, 344 F.3d 324, 328 (3d Cir. 2003), by denying Santiago's motion for a mistrial. During summation, the prosecutor argued that the entry for "Carlos" at phone number "610-864-0477" in Mejia's cell phone contact list referred to Mejia's nephew, not Carlos Correa. The record supports the government's assertion. Villegas testified that the cell phone number for Mejia's nephew was "610-864-0477." Thus, a reasonable inference could be drawn that the entry for "Carlos" in Mejia's cell phone referred to Mejia's nephew, not Carlos Correa.

Third, the District Court did not abuse its discretion by denying Santiago's motion for a downward variance when imposing Santiago's sentence. *See, e.g.*, *Gall v. United States*, 552 U.S. 38, 51 (2007) (applying an abuse-of-discretion standard when reviewing whether criminal sentences were the product of procedural error or were substantively unreasonable). Contrary to Santiago's assertions, the record clearly reflects that the District Court considered Santiago's motion and did not commit procedural error. Notably, the District Court: heard argument from the parties at sentencing on the motion; read Santiago's memorandum in aid of sentencing with "great care"; and determined that Santiago's guideline range was appropriately calculated (neither party contends that the guideline calculation was improper). The court also reviewed in detail the Section 3553(a) factors that were pertinent to Santiago's sentence (e.g., the nature and circumstances of the crime were "very serious" because they involved kidnapping at gun point, and Santiago's involvement was especially crucial because he mentored his much younger co-conspirators).

Also, the District Court did not substantively err in imposing a within-guidelines sentence because, *inter alia*, Santiago: was involved in a violent kidnapping; provided the guns to his co-conspirators; orchestrated the ransom demands; served as a mentor to his co-conspirators; conducted counter-surveillance during the ransom exchange; and locked Correa in his shed. Considering the violent nature of—and Santiago's essential participation in—the crime and the need for deterrence, Santiago's 319-month sentence was reasonable. Thus, the Court did not abuse its discretion.

Accordingly, we will affirm.[9]

---

[9] The government moved to file Volume I of its Supplemental Appendix under seal because it contains documents that were sealed by the District Court to protect the privacy of a government witness. Santiago moved to file Volume VI of the Joint Appendix under seal for the same reason. Both of these motions are granted. Because these motions did not specify a desired duration and because none of the documents sought to be sealed are grand jury materials, presentence reports, or statements of reasons for the sentence, as set forth in Local App. R. 106.1(c)(1), we will direct the Clerk's Office to seal the materials subject to the aforementioned motions for five years from the conclusion of the case, after which the materials are to be unsealed without notice to the parties. *See* Local App. R. 106.1.