**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

Nos. 12-2094 and 12-1959
_____

UNITED STATES OF AMERICA

v.

LLOYD WASHINGTON, JR. a/k/a, BUB

Lloyd Washington, Jr.,

Appellant in case no. 12-2094.


UNITED STATES OF AMERICA

v.

GREGORY JONES, a/k/a "G"

Appellant in case no. 12-1959.

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(District Court Nos. 2-07-cr-000258-001 and 2-07-cr-00258-005)
District Judge:  Honorable Cynthia M. Rufe

_____

Submitted under Third Circuit LAR 34.1(a)
on July 19, 2013


(Filed: August 21, 2013)

BEFORE:  RENDELL, SMITH and ROTH, Circuit Judges

O P I N I O N

**RENDELL**, Circuit Judge:

Co-defendants Lloyd Washington, Jr. and Gregory Jones were convicted by a jury of one count of conspiracy to distribute five kilograms or more of cocaine and one count of attempted possession with intent to distribute five kilograms or more of cocaine.  They now appeal the District Court's judgments of conviction.  Washington asserts that the District Court erred in failing to sever his case, violated the Confrontation Clause, admitted misleading evidence, allowed the Government to make impermissible comments about his failure to testify, and that these errors collectively require a new trial. He also alleges that the District Court violated his rights under the Speedy Trial Act. Jones asserts that the District Court admitted irrelevant and unfairly prejudicial evidence and improper character evidence.  For the reasons discussed below, we will affirm.

**I.**

On February 18, 2009, a grand jury returned a third superseding indictment against Washington, Jones, and Ronald Crawford, charging them with one count of conspiracy to possess cocaine with intent to distribute and one count of attempted possession of cocaine with intent to distribute.  The conspiracy count alleged that Washington, Jones, and Crawford, along with cooperating witnesses, Niema Simpson and Mark Rimes, conspired to obtain and distribute more than 100 kilograms of cocaine between May 16, 2006 and

2

February 7, 2007. Specifically, the indictment stated that Jones and Washington directed

Crawford, Simpson, and Rimes to retrieve and deliver packages containing cocaine from

United Parcel Service ("UPS") stores in Philadelphia and that Defendants, Crawford, and

Simpson communicated with each other regarding the retrieval of the packages via

cellular telephones. The conspiracy count also detailed a pickup of cocaine from a UPS

store that occurred on February 7, 2007. This pickup formed the basis for the attempted

possession offense in the indictment.

Before trial, the Government filed motions in limine to admit (1) the testimony of

Bradley Torrence and Robert Shepherd regarding Jones's involvement in a prior

conspiracy to ship cocaine to Philadelphia via Federal Express[1] and (2) evidence that

Drug Enforcement Agency ("DEA") agents seized from Jones's house during his arrest in

August 2008, including $85,400 in cash and $45,000 in jewelry and watches. The

District Court granted both motions over Jones's objections. It admitted Torrence's and

Shepherd's testimony as evidence of Jones's knowledge and intent to commit the charged

offenses and as proof of a common scheme. In admitting the evidence, the District Court

instructed the jury that the testimony was offered only as evidence of Jones's knowledge

of how the illegal drugs were packaged and shipped. It also explicitly noted that the

testimony was not offered as evidence against Washington or Crawford. The District

Court admitted the cash, jewelry, and watches as evidence of the fruits of the charged

crimes. In the final jury charge, it instructed the jury that it could only consider the

---

[1] The Government's motion in limine also stated that Torrence would testify that he saw Jones and Washington selling drugs. Before trial, however, the Government notified Washington's counsel that Torrence would only testify about Jones.

evidence "for the purpose of deciding whether the cash discovered when Gregory Jones was arrested was the proceeds of the conspiracy charged in this case." (S.A. 213.) Jones challenges both these rulings on appeal.

During trial, the Government moved to admit (1) evidence that Jones did not file tax returns from 2006 through 2008 and (2) summary charts of phone calls among the co-conspirators. The District Court admitted the tax evidence over Jones's objection that the evidence was irrelevant, reasoning that it was relevant to whether there was a legitimate source of the cash and property that the DEA agents had seized from Jones's residence. It admitted the summary charts over the Defendants' objections that the charts improperly attributed a phone number to Jones, explaining that the DEA agent who created the charts laid a foundation for his conclusion that the contested number belonged to Jones. Jones challenges the admission of the tax evidence, and Washington challenges the admissibility of the summary charts.

The Government also introduced the testimony of cooperating witnesses, Simpson and Rimes. Washington's cross-examination of both witnesses was limited by the District Court, which Washington challenges on appeal. Simpson had given multiple inconsistent statements to authorities, which she explained at trial by stating that she had lied at times because she was afraid of Washington. Washington attempted to impeach this testimony by establishing that she was actually afraid of her drug-dealer boyfriend and that she was lying to protect him.[2] After Washington's counsel asked Simpson several questions about her boyfriend, he asked if she had called Washington after her

---

[2] Simpson's boyfriend was not implicated in this case.

4

boyfriend had given her a black eye.  The District Court instructed the witness not to answer, concluding that the question was irrelevant.  Washington attempted to impeach Rimes's statement that he did not inform Washington that he had previously been arrested by questioning Rimes about his prior arrest.  The District Court disallowed this and told the jury to disregard it.

On July 30, 2009, a jury convicted Washington and Jones of both counts and acquitted Crawford.  Washington and Jones filed post-trial motions for a new trial and for judgment of acquittal.  Relevant to this appeal, Washington argued that his trial should have been severed from Jones's because the testimony regarding Jones's involvement in a prior drug-dealing conspiracy was unfairly prejudicial to him, as he was not implicated in that conspiracy.  The District Court held that Washington waived this argument because he did not move to sever after the District Court granted the Government's motion to admit Torrence's and Shepherd's testimony.  In addition, the District Court held that Washington did not demonstrate that the failure to sever prejudiced him to the point of depriving him of a fair trial, explaining that the jury received appropriate limiting instructions and was able to evaluate the evidence against each defendant separately, as its decision to acquit Crawford demonstrated.  Washington appeals this ruling.

5

*A. Washington*

1. Severance

Washington argues that the District Court erred by not severing his trial from Jones's because the evidence of Jones's involvement in a prior drug-dealing conspiracy was unfairly prejudicial. Although Washington did not raise this argument at trial, he nevertheless contends that he did not waive it because the Government misled him into believing that Torrence would testify that he saw both Jones and Washington selling drugs. The Government, however, notified Washington before trial that Torrence would only testify about Jones, which it also made clear in its trial memorandum. Thus, Washington should have raised his severance argument when he received the Government's notice, and by failing to do so, he waived it. Accordingly, we will review the District Court's decision not to sever Washington's trial from Jones's for plain error.

In addition, for the first time on appeal, Washington contends that the District Court erred by not severing his trial from Crawford's because Crawford's defense was antagonistic and prejudicial to his defense. We will also review this severance ruling for plain error.

"There is a preference in the federal system for joint trials of defendants who are indicted together," as joint trials "promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." *Zafiro v. United States*, 506

---

[3] The District Court had jurisdiction under 18 U.S.C. § 3231. This Court has jurisdiction under 28 U.S.C. § 1291.

U.S. 534, 537 (1993) (internal quotation marks and citation omitted). Accordingly, we instruct district courts to grant severance under Federal Rule of Criminal Procedure 14(a) "'only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.'" *United States v. Balter*, 91 F.3d 427, 432 (3d Cir. 1996) (quoting *Zafiro*, 506 U.S. at 538-39). We have explicitly declined to adopt a bright-line rule that mutually antagonistic defenses require severance. *Id.* at 432-433.

We find no merit in Washington's contention that his case should have been severed from Jones's because the evidence offered against Jones was unfairly prejudicial to Washington. The District Court explicitly instructed the jury that Torrence's and Shepherd's testimony was not being introduced against Washington and Crawford, and the jury was clearly able to compartmentalize the evidence at trial, as it acquitted Crawford. Thus, we will affirm the District Court's ruling that Washington did not receive an unfair trial as a result of being tried with Jones.

We also find no merit in Washington's contention that his trial should have been severed from Crawford's because Crawford's defense was mutually antagonistic to his. First, we reject the premise that the defenses were mutually antagonistic. Crawford's defense was that Washington hired him to pick up packages from UPS, but did not inform him that the packages contained cocaine. But Washington's failure to tell Crawford what was in the parcels does not necessarily establish Washington knew what was in the parcels. Second, and more importantly, Washington has failed to identify any specific trial right that was compromised by the joint trial or demonstrate that the joint

7

trial impeded the jury from making a reliable judgment about guilt or innocence. He has simply stated that his defense was mutually antagonistic to Crawford's. This argument without more is clearly insufficient under our precedent. *See Balter*, 91 F.3d at 433. Thus, we will not disturb the verdict based on the District Court's failure to sever Washington's case from Crawford's.

### 2. Confrontation Clause

Washington argues that the District Court impermissibly limited his cross-examination of Simpson about her boyfriend, and as a result, prevented him from establishing that she was lying to protect him. Washington also contends that the District Court impermissibly limited his cross-examination of Rimes about a prior unrelated arrest for theft. We review a district court's decision to limit cross-examination for abuse of discretion. *United States v. Ellis*, 156 F.3d 493, 498 (3d Cir. 1998). A district court improperly limits cross-examination if a reasonable jury might have received a significantly different impression of the witness's credibility if counsel had been permitted to pursue the proposed line of inquiry. *United States v. Mussare*, 405 F.3d 161, 169 (3d Cir. 2005).

We find no merit in Washington's contention that the District Court erred in restricting his cross-examination of Simpson about her boyfriend. Washington points to no evidence associating Simpson's boyfriend with the conspiracy. Thus, we see no plausible reason why she would need to lie to protect him. But regardless of the relevance of this testimony, it is clear from the record that the District Court gave counsel wide latitude to question Simpson about her relationship with her boyfriend. Counsel

8

established that Simpson's boyfriend was a drug-dealer, that she was afraid of him, and that he had physically abused her. Moreover, counsel was also able to challenge Simpson's credibility by questioning her about her involvement in the conspiracy, her prior inconsistent statements to the authorities, and her plea agreement with the Government. Thus, we find the District Court did not abuse its discretion in limiting this line of questioning.

We also find no merit in the contention that the District Court erred in limiting Washington's cross-examination of Rimes. Rimes, who had been arrested for theft, testified that he had never told Washington about his arrest. Washington attempted to impeach this statement by questioning Rimes about his prior arrest. But because Rimes simply stated that he had not told Washington about his arrest, questioning Rimes about whether he had in fact been arrested did not impeach his prior testimony. As such, we find the District Court did not abuse its discretion in limiting Washington's questioning of Rimes.

### 3. Summary Charts

Washington alleges that the District Court improperly admitted summary charts of the phone calls among the co-conspirators because the charts inaccurately attributed a phone number to Jones. Rule 611(a)(2) affords courts "reasonable control over the mode and order of examining witnesses and presenting evidence so as to . . . avoid wasting time." Courts have interpreted this rule to allow trial courts to admit summary exhibits to "clarify and simplify complex testimony or other information and evidence." *United States v. Bray*, 139 F.3d 1104, 1111 (6th Cir. 1998). Summary charts admitted under

9

Rule 611(a) may be used to highlight evidence favorable to a party's case if they are linked to evidence already admitted. *United States v. Milkiewicz*, 470 F.3d 390, 397-98 (1st Cir. 2006).

Here, the underlying phone records for the charts were admitted into evidence; a DEA agent explained why he concluded that the contested phone number belonged to Jones; defense counsel was allowed to question the DEA agent about this conclusion; and in its jury charge, the District Court instructed the jury that "[t]he summaries themselves are not evidence or proof of facts. If those summaries do not correctly reflect the evidence in the case, you should disregard them and determine the facts from the underlying evidence." (S.A. 187.) Based on these facts, we conclude that the District Court did not abuse its discretion in admitting the summary charts.

### 4. Fifth Amendment Right Not To Testify At Trial

Washington claims that in its closing argument, the Government impermissibly commented on his decision not to testify at trial. Washington did not challenge the prosecutor's statements at trial; thus, we will review the District Court's decision to allow the comments for plain error. A remark is impermissibly directed at a defendant's silence when "the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." *Lesko v. Lehman*, 925 F.2d 1527, 1544 (3d Cir. 1991) (internal quotation marks and citation omitted).

10

Washington takes issue with the following statement:

> We're asking you to compare [the cooperating witnesses'] testimony to the other evidence in the case. . . . Look at how their testimony stacks up with the phone records, look at how it stacks up to the defendants' own words, look at how it stacks up to the experiences of the other cooperating witnesses and the testimony of law enforcement officers who conducted the surveillance and made the arrests in this case, and use your common sense.

(S.A. 56.) After reviewing the record, we do not think that a jury would "naturally and necessarily" interpret the Government's statement as a comment on Washington's failure to testify. In fact, we find it clear that the Government's reference to "defendants' own words" was referring to witness testimony about statements Washington and Jones made during the conspiracy. Moreover, the District Court instructed the jury that the government had the burden of proof and that it was not to draw "any adverse inference against any defendant because he did not take the witness stand." (S.A. 181.) *See United States v. Adamo*, 534 F.2d 31, 40 (3d Cir. 1976) (reasoning that the district court's instructions were sufficient to cure the jury's possible impression that the government was commenting on the defendant's failure to testify). Thus, we conclude the District Court did not commit plain error by allowing the Government's statement during closing arguments.[4]

### 5. The Speedy Trial Act

Washington contends that his right to a speedy trial was violated under the "ruse exception" to the Speedy Trial Act because he was not indicted within 30 days of his arrest on state charges. Washington, however, failed to move for dismissal of the

---

[4] As we find no error in the District Court's rulings, we reject Washington's contention that the cumulative effect of the District Court's errors warrants a new trial.

11

indictment before trial and thus waived his Speedy Trial Act claim. *See United States v. Spagnuolo,* 469 F.3d 39, 44-46 (1st Cir. 2006) (holding that waiver provision in § 3162(a)(2) applies to § 3161(b)).

    *B. Jones*

       1. Evidence Seized from Jones's Residence and Jones's Failure to File Taxes

Jones does not dispute that a defendant's unexplained wealth is admissible in a narcotics case. *See United States v. Chandler*, 326 F.3d 210, 215 (3d Cir. 2003) (collecting cases). Rather, he contends that the District Court erred in admitting the money and jewelry that DEA agents seized from his house when he was arrested because (1) the evidence, which was seized 18 months after the charged conspiracy ended, was too attenuated in time to be direct proof of the conspiracy and (2) Jones had no connection to the evidence. Based on this argument, Jones also argues that the District Court erred in admitting the evidence of his failure to file income taxes, as its only purpose was to demonstrate that there was no legitimate source of the cash and jewelry. We review a district court's admission of evidence for abuse of discretion. *See Stecyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408, 412 (3d Cir. 2002).

We find no abuse of discretion in the District Court's decision to admit the evidence seized from Jones's house. First, we reject Jones's assertion that the evidence was too attenuated in time. The evidence at trial established that Jones was involved in a conspiracy to obtain and distribute large quantities of cocaine over a nine-month period in 2006 and 2007; the conspiracy generated hundreds of thousands of dollars of profits;

and that Jones was unemployed.  Considering the length of the conspiracy and the amount of profits that it generated, we do not find the 18 months between when the conspiracy was completed and when the evidence was seized too long to destroy the nexus between Jones's unexplained wealth and the charged crime.   Second, we conclude that there was sufficient evidence connecting Jones to the evidence.  The money was found in Jones's cargo shorts in his bedroom and in bags in his attic on top of greeting cards marked "Greg".  Based on this evidence, we conclude that the District Court did not abuse its discretion in admitting the money and jewelry.  Consequently, we also find that the District Court did not abuse its discretion in admitting evidence of Jones's failure to file income taxes, as this evidence reasonably supported the Government's assertion that Jones obtained the cash and the jewelry through illegitimate means. *See Chandler*, 326 F.3d at 215.

2. Testimony of Torrence and Shepherd

Jones contends that the District Court erred in admitting Torrence's and Shepherd's testimony under Federal Rule of Evidence 404(b) because their testimony was not evidence of Jones's knowledge and intent to commit the charged offenses or of a common scheme, as neither witness testified that he taught Jones how to use Federal Express to purchase bulk quantities of cocaine.  Rather, Jones contends that their testimony merely established that he had a buyer-seller relationship with them and that the prejudicial effect of this evidence outweighed its probative value.

Federal Rule of Evidence 404(b) states that evidence of other crimes, wrongs, or acts is not admissible to prove a defendant's criminal propensity, but may be admitted to

13

prove knowledge and intent. "To be admissible under Rule 404(b), evidence of uncharged crimes or wrongs must (1) have a proper evidentiary purpose; (2) be relevant; (3) satisfy Rule 403; and (4) be accompanied by a limiting instruction (where requested) about the purpose for which the jury may consider it." *United States v. Green*, 617 F.3d 233, 249 (3d Cir. 2010). This Court has held on numerous occasions that evidence of similar activities is probative of knowledge and intent. *See, e.g.*, *United States v. Lee*, 573 F.3d 155, 166 (3d Cir. 2009) (evidence of a prior drug conviction was admissible to prove the defendant's intent to distribute drugs in his possession); *United States v. Givan*, 320 F.3d 452, 460-61 (3d Cir. 2003) (six-year-old drug distribution conviction was properly admitted to show knowledge and intent of defendant who was found in a car with heroin hidden under his seat).

We find it irrelevant that Torrence and Shepherd did not testify that they taught Jones how to use mail carriers to purchase drugs. The witnesses testified that they repeatedly sold Federal Express boxes containing bricks of cocaine to Jones. Torrence also testified that he allowed Jones to order cocaine directly from his supplier in Texas. This evidence demonstrated that Jones knew how to obtain cocaine via a commercial mail carrier. Given the similarities to the methods employed in the charged conspiracy, the evidence also showed the use of a common scheme or plan. In addition, the District Court properly instructed the jury that the challenged testimony was admitted to show only that Jones had "knowledge of and/or acted with a similar method of operation in using UPS . . . and false sender and recipient information to ship cocaine into Philadelphia in this case." (S.A. 212.) As such, we conclude that the District Court did

14

not abuse its discretion in concluding that the testimony was admissible under Rule 404(b).

## III.

For the reasons discussed above, we will affirm the District Court's judgments of conviction for Washington and Jones.